CARTER, Judge.
This is an appeal from a suit on a note.
Background
On November 2,1977, Richmond C. Price and Rhoda Taylor Price executed a conventional mortgage in favor of Fidelity Funds, Inc. (Fidelity Funds) on Lot 16, Square 7, Northdale Section 2, to secure a note for *682 $10,159.20 payable to Fidelity Funds. This mortgage was inferior to a first mortgage executed by the Prices in 1973 in favor of Carruth Mortgage Company. In 1978, Fidelity Funds foreclosed on its mortgage and purchased the property at sheriffs sale on February 7, 1979.
On March 20, 1979, Fidelity Funds sold the property back to Mrs. Price (who had divorced her husband) for $23,652.55. This purchase price represented the combination of $9,647.34 in cash and an assumption of the $14,005.21 first mortgage to Carruth Mortgage Company. In order to finance the cash portion of the purchase, Mrs. Price executed a note and conventional mortgage to Fidelity Funds for $14,676.60, which represented loan proceeds of $7,146.73, credit life insurance premium of $733.83, credit disability premium of $880.60, and $5,915.44 interest at a rate of 21.38%. It is this second note and mortgage on which Fidelity Funds instituted the instant suit.
Facts
We adopt the following factual findings of the trial judge:
The March 20,1979 mortgage note provided monthly payments of $244.61 per month commencing May 15, 1979. Rhoda Taylor Price commenced her payments on June 18, 1979, and made her last payment on February 18, 1983, which payment was for the month of October 1982. Exhibit D-3 reflects the various dates payments were made. On March 21, 1983, Fidelity Funds, through its attorney, Charles H. Braud, Jr., sent a five-day demand letter to Rhoda Taylor Price and her endorsers, for the balance owing, otherwise suit would be filed (Exhibit D-4). Rhoda Taylor Price’s house was destroyed by fire on January 10, 1983, and Fidelity Funds was the loss payee on the policy.
On March 24,1983, Rhoda Taylor Price brought $244.61 to Fidelity Funds which was refused by its employee, R.L. Campbell. Mr. Campbell gave Ms. Price a notice stating that if she brings the note current, the December 1982, January 1983, February 1983, and March 1983 payments, plus $15.00 last (sic) charge, then it would accept the amount and let her continue her monthly payments, provided the payments were received by March 29,1983[1] (Exhibit D-5). Ms. Lynda Campbell testified that Ms. Price never returned with the money.
Ms. Price and her witness, Ms. Jackson, testified that Ms. Price took $2,100.00 cash to Fidelity Funds, they believe in March 1983, but Fidelity would not accept the funds.
On April 19, 1983, Fidelity Funds, through its attorney, George R. Covert, wrote Ms. Price asking her to endorse the checks received by her from the fire loss and pay off the mortgage. This request was not complied with and suit was filed on May 16, 1983.
Ms. Price alleges in her answer that Fidelity Funds should be prohibited from accelerating the note since Fidelity Funds had customarily permitted her to make late payments, that Fidelity Funds knew of the fire loss and acquiesced in delinquent payments and she attempted to bring the note current in the latter part of April 1983.
Exhibit D-3 certainly supports Ms. Price’s contention that she was customarily late with her monthly payments, but it was not until September 1983 that she got two months delinquent. The August 29, 1982 payment was for June and July. The next payment on October 20, 1982, was for August. The November 26, 1982 payment was for September and the next payment, February 18, 1983, was for October 1982 (Exhibit D-3).
Fidelity Funds did not accelerate the note, but merely advised Ms. Price she had to bring the note current by March 29, 1983 (Exhibit D-5). Her failure to bring the note current prompted the suit. Although Ms. Price and Jackson testified that an attempt was made to bring the note current in late March, the answer alleged the attempt was in late April 1983.
*683 The Court finds that Ms. Price had sufficient notice to bring the note current before the suit was filed.
1. Actually the November payment was also delinquent.
Plaintiff, Fidelity Funds, instituted suit via ordinary proceeding for recognition of its mortgage dated March 20, 1979, on Lot 16, Square 7, Northdale Section 2, and for a money judgment for $4,533.51, representing the balance of a note secured by that mortgage, together with interest, attorney’s fees and costs. Suit was filed against Rhoda Taylor Price, as maker of the note, and London and Leona W. Taylor, as endorsers.
Mrs. Price filed an answer and reconven-tional demand, alleging several defenses to the suit. Fidelity Funds filed an exception of prescription to the reconventional demand. After trial on the merits, the trial judge ruled in favor of Fidelity Funds on its main demand and maintained its exception of prescription, dismissing Mrs. Price’s reconventional demand. From this judgment, Mrs. Price appeals.
Timeliness of Fidelity Funds’ Plea of Prescription
Mrs. Price contends that Fidelity Funds’ plea of prescription was not timely filed. Prescription is an objection raised by peremptory exception under LSA-C.C.P. art. 927 and must be pleaded according to LSA-C.C.P. art. 928(B).
LSA-C.C.P. art. 928(B) provides:
The peremptory exception may be pleaded at any stage of the proceeding in the trial court prior to a submission of the case for a decision and may be filed with the declinatory exception or with the dilatory exception, or both.
The trial of this matter was held on August 7 and 8,1984. At the conclusion of the trial, the trial judge allowed Mrs. Price fifteen days to submit a memorandum on findings of fact and conclusions of law. Fidelity Funds was given ten days thereafter to respond. On August 15, 1984, (well before either deadline) the exception of prescription was filed. The case was held open until the memoranda were filed. The exception was filed within this time period and prior to submission of the case for decision. Therefore, we find that Fidelity Funds’ plea of prescription was timely filed.
Fidelity Funds’ Plea of Prescription
In its exception, Fidelity Funds contended that Mrs. Price’s reconventional demands had prescribed. In these reconven-tional demands, Mrs. Price asserted claims under the Louisiana Consumer Credit Law, LSA-R.S. 9:3510 et seq., and the Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401 et seq. Mrs. Price reasons that the note and mortgage sought to be enforced violates LSA-R.S. 9:3551 in that it is unconscionable, that the interest charged violates LSA-R.S. 9:3519 and 9:3503 in that it is usurious, and that Fidelity Funds breached its fiduciary duty under LSA-R.S. 9:3542 in its handling of the credit life and credit health and accident insurance. Mrs. Price further reasons that Fidelity Funds engaged in unfair trade practices when it failed to pay off the superior mortgage to Carruth Mortgage when it acquired the mortgaged property at sheriff’s sale.
Fidelity argues that these claims have prescribed by virtue of LSA-R.S. 9:3552(E) and LSA-R.S. 51:1409(E).
A. Reconventional Demand under LSA-R.S. 9:3503
LSA-R.S. 9:3503 provides that “the amount of simple conventional interest on obligations bearing interest from date and secured in whole or in part, directly or indirectly, by a mortgage on immovable property, shall not exceed twelve percent per annum.” Plaintiff contends that she was charged interest in excess of this amount, which plaintiff reasons constitutes usurious interest.
However, LSA-R.S. 9:3514 permits parties to an agreement to contract that their agreement will be governed by the provisions of the Consumer Credit Law. In the instant case, the note sued on contains a *684 provision which states “the makers, grantors, endorsers, and sureties of this note specifically contract that the Louisiana Consumer Credit Law shall govern the terms of this contract.”
Clearly, Mrs. Price agreed to be bound by the provisions of the Consumer Credit Law, and the provisions of LSA-R.S. 9:3503 are clearly inapplicable to the instant case.
B. Reconventional Demands Under Consumer Credit Law, LSA-R.S. 9:3510-3571
Mrs. Price’s right to any civil remedy under LSA-R.S. 9:3519, 3542, or 3551 is restricted by the procedural requirements of LSA-R.S. 9:3552. Under LSA-R.S. 9:3552 A (l)(a), a consumer may recover civil penalties afforded by the statute for violations of the Louisiana Consumer Credit Law only after:
(i) written notice is given to the extender of credit by certified mail addressed to the extender of credit’s place of business in which the consumer credit transaction arose:
(ii) a copy of such notice is mailed to the extender of credit’s agent for service of process; and
(iii) thirty days have elapsed since receipt of such notice by the extender of credit, and the violation has not been corrected.
Mrs. Price complied with this notice requirement.[1] We find, however, as did the trial judge, that Mrs. Price’s action came too late.
LSA-R.S. 9:3552(E) provides:
Any civil action under this section must be brought within sixty days of final payment of the consumer credit contract, or in the case of a revolving loan or revolving charge account, within one year of the date of the violation. (Emphasis added)
The note sued on provided for a final payment on April 15,1984. The note, however, contained this acceleration clause:
Default in the payment of any one installment, shall at the option of the holder hereof and without notice on demand, render the entire unpaid balance, less any unearned finance charge, at once due and payable.
Fidelity Funds exercised its option to accelerate the note when it filed suit on May 16, 1983. At that time, the note, in its entirety, became due and payable, making the date of final payment of this consumer credit contract May 16, 1983. Mrs. Price then had sixty days from that date under LSA-R.S. 9:3552(E) to bring her civil action under the Louisiana Consumer Credit Law. Mrs. Price sent notice on May 29, 1984, over one year after final payment was due and payable.[2]
Mrs. Price argues that the prescriptive period should not begin to run until after her final payment on the contract is made. Prescriptive periods are established by the legislature to extinguish stale claims. The very short period provided in LSA-R.S. 9:3552 manifests the legislative intent to have claims arising out of Louisiana Consumer Credit Law dealt with quickly. Some debtors might never pay off their consumer credit contracts, and under Mrs. Price’s interpretation, their claims would never prescribe. This would obviously undermine the legislature’s intent.
Mrs. Price also argues that she was customarily late with her payments on the *685 note to Fidelity Funds, establishing a course of conduct through its acceptance of those payments which amounted to a tacit waiver of its right to demand the enforcement of the acceleration clause of the note without first placing her on notice that this conduct would no longer be acceptable and without putting her in default.
The trial judge correctly stated that there is no question that Mrs. Price was customarily late with her monthly payments. She was never more than one month behind at a time in her payments until the last few payments when she was delinquent by six months. The trial court correctly determined that no course of conduct was established that Fidelity Funds accepted payments that late.
Clearly, Mrs. Price’s claims under LSA-R.S. 9:3519, 3542 and 3551 have prescribed due to her failure to strictly comply with LSA-R.S. 9:3552. See Shoemaker v. Fidelity Finance, Inc., 464 So.2d 1005 (La.App. 1st Cir.1985), writ denied, 467 So.2d 1130 (La.1985).
C. Reconventional Demand under the Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401 et seq.
Mrs. Price asserts Fidelity Funds engaged in fraud and unfair trade practices when it did not pay off the superior mortgage to Carruth Mortgage Company at the time Fidelity Funds acquired her property at sheriffs sale. We agree with the trial judge that this claim has prescribed under LSA-R.S. 51:1409(E).
LSA-R.S. 51:1409(E) provides:
The action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action.
The “transaction” which gave rise to the instant suit occurred in 1979 when the property was purchased at sheriffs sale. At the time of the sale of the property to Mrs. Price on March 20, 1979, Fidelity Funds had not paid the superior mortgage. Any complaints as to that transaction under LSA-R.S. 51:1401 et seq. prescribed one year after that date.
Use of Prescribed Claims as Defenses to Suit
Mrs. Price contends that, although her reconventional demands may have prescribed, her prescribed claims may still be asserted as defenses to the note and mortgage sued upon.
LSA-C.C.P. art. 424 provides as follows:
A person who has a right to enforce an obligation also has a right to use his cause of action as a defense.
Except as otherwise provided herein, a prescribed obligation arising under Louisiana law may be used as a defense if it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff. A prescribed cause of action arising under The Federal Consumer Credit Protection Act may not be used as a defense even if it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff.
However, in connection with the enforcement of a negotiable instrument the defense of redhibition may not be used if it has otherwise prescribed.
This article permits the use of prescribed claims as a defense. Although the use of a prescribed claim under the Federal Consumer Credit Protection Act is prohibited by LSA-C.C.P. art. 424, claims under the Louisiana Consumer Credit Law or the Unfair Trade Practices and Consumer Protection Law are permitted. Therefore, Mrs. Price, although barred by prescription from bringing an action based on the Louisiana Consumer Credit Law or the Unfair Trade Practices and Consumer Protection Law, is entitled to assert any alleged violations as a defense to this action. See, T.P.M.P.T. Emp. Credit Union v. Charpentier, 376 So.2d 592 (La.App. 4th Cir. 1979); Termplan Mid-City, Inc. v. Laughlin, 333 So.2d 738 (La.App. 4th Cir.1976).
A. Usury
Two witnesses testified at trial on the issue of usury. Joseph E. Haydel, Supervi *686 sor of Credit Control for the State of Louisiana, Office of Financial Institutions, whose office is charged with the responsibility of checking the interest charged by financial institutions in the state for unfair trade practices and violations of the Louisiana Consumer Credit Law, testified regarding the computation of interest. In calculating the interest, his office uses standardized charts and books for necessary formulas and guidance. Because of the particular peculiarities of this case, Mr. Haydel calculated the interest charged to Mrs. Price by hand. Mr. Haydel determined there was an overcharge of interest of $251.84. The calculations were long and tedious, and, when cross-examined, Mr. Haydel admitted they were hurriedly done and may be in error.
Lynda Campbell, testifying on behalf of Fidelity Funds, admitted an overrage of $198.04. She testified that when Fidelity Funds received a demand letter from Mrs. Price for a refund of the finance charges in accordance with LSA-R.S. 9:3552(A)(l)(a), a recalculation was performed at which time, the overrage was revealed and was subtracted from the amount demanded by Fidelity Funds.
Although we are not convinced by the testimony of Mr. Haydel, we cannot overlook the admission of Fidelity Funds as to the overrage. The amount of the offset for such overrage inuring to the benefit of Mrs. Price depends on whether it was committed in good or bad faith.
LSA-R.S. 9:3552(A)(1) states, in pertinent part:
(1) Intentional violations or violations not caused by good faith errors.
(a) If the court finds that the extender of credit has intentionally or as a result of error not in good faith violated the provisions of this chapter, the consumer is entitled to a refund of all loan finance charges of credit service charges and has the right to recover three times the amount of such loan finance charge or credit service charge together with reasonable attorney’s fees. The right to recover the civil penalty under this subsection accrues only after
(i) written notice is given to the extender of credit by certified mail addressed to the extender of credit’s place of business in which the consumer credit transaction arose;
(ii) a copy of such notice is mailed to the extender of credit’s agent for service of process; and
(iii) thirty days have elapsed since receipt of such notice by the extender of credit, and the violation has not been corrected.
(b) Except as otherwise provided herein, if the notices provided for in Subsection A(l)(a) of this section have been given by the consumer, the following acts by the extender of credit shall be presumed to be an intentional violation or a violation not resulting from good faith error:
(i) Failure to return or give credit for an overcharge in the loan finance charge or credit service charge or, failure to return a deficiency in the rebate within the time period set forth in Subsection A(l)(a)(iii) of this section when such overcharge or deficiency exceeds the greater of (1) ten percent of such loan finance charge, credit service charge or rebate; or (2) fifteen dollars.
The overcharge did not exceed ten percent of the loan finance charge of $5,915.44, and we cannot say that Fidelity Funds acted in bad faith so as to require a credit for all loan finance charges. The totality of the evidence fails to prove bad faith on the part of Fidelity Funds. Consequently, Mrs. Price is not entitled to an offset equal to the amount of the entire loan finance charge.
LSA-R.S. 9:3552(A)(2)(a) states:
If a violation of this chapter is not intentional or is made in good faith on the part of the extender of credit the court may require the extender of credit to correct the violation, but the consumer is not entitled to the civil remedies granted by this section.
*687 Because Fidelity Funds voluntarily corrected its overcharge, it is not necessary for the court to require them to subtract the overcharge from the principal demanded at trial. Although Mrs. Price is entitled to an offset under this provision, the offset was already made, and Mrs. Price is entitled to no further remedy.
B. Unconscionability
LSA-R.S. 9:3551 provides that if the court determines that any clause in a consumer credit transaction agreement is unconscionable, it may enforce the agreement without the unconscionable clause.
In the instant case, we cannot say that the agreement or any part thereof was unconscionable under LSA-R.S. 9:3551 so as to refuse to enforce the agreement or any part thereof.
C. Unfair Trade Practices
Mrs. Price has failed to establish that she suffered any loss from the use of an unfair or deceptive trade practice declared unlawful by LSA-R.S. 51:1405.
Conclusion
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be paid by defendant, Rhoda Taylor Price.
AFFIRMED.

. Although no return receipt was placed into evidence to show the notice was sent by certified mail, Fidelity Funds’ witness admitted receiving it. Because of our decision, we will not discuss the questions of strict compliance with the statute (other than timeliness) or sufficiency of evidence.

. Mrs. Price answered the suit timely on June 2, 1983, but alleged as her only defense that Fidelity Funds should not be allowed to accelerate payments on the note because Mrs. Price was late in paying and Fidelity had established a pattern of accepting such late payments. She did not send the required notice until May 29, 1984, and did not file a reconventional demand based on the Louisiana Consumer Credit Law until July 9, 1984. Her answer, therefore, in no way interrupted the prescriptive period for her claim under the Louisiana Consumer Credit Law. LSA-C.C. art. 3462.