592 So.2d 889 (1991)
PREFERRED INVESTMENT CORPORATION
v.
Cleveland NEUCERE and Gloria Neucere, a/k/a Gloria Galland Neucere.
No. 89-CA-2193.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1991.
Rehearing Denied February 12, 1992.
*890 Eric A. Holden, Patricia A. Garcia, New Orleans, for appellant.
Martin A. Welp, Donald S. Martin, New Orleans, for appellee.
Before BARRY and CIACCIO and GULOTTA, JJ.
CIACCIO, Judge.
Plaintiff, the defendant in reconvention, Preferred Investment Corporation (PIC), appeals a trial court judgment dismissing appellant's main demand and granting judgment in favor of defendants, the plaintiffs in reconvention, Cleveland Neucere Jand Rebecca Neucere Lagman[1]. Defendants also appeal, seeking to increase the statutory penalties and attorney fees awarded by the trial court. We reverse the judgment of the trial court and render judgment in favor of plaintiff on its original demand.
On March 17, 1974, Cleveland and Gloria Neucere obtained a loan from Preferred Investment Corporation to consolidate their debts totalling nearly $17,000.00. To secure the discounted loan, the Neuceres mortgaged their home and its contents. The total amount of the secured loan was $29,269.20, consisting of $17,000.00 in principal and a discount of $12,269.20, the amount to be earned as interest over the ten year contractual term of the loan. Under the terms of the precomputed credit transaction, the Neuceres were required to make 120 consecutive monthly payments of $243.91, due the 20th day of each month. The first installment was payable on April 20, 1974 and the final installment was due and payable on March 20, 1984, the contractual maturity date, with interest at the rate of 12% per annum from the contractual maturity date for one year, and 8% per annum thereafter. The note signed by the Neuceres also contained an acceleration clause which provided:
Failure to pay any installment of this note in full within 10 days after its due date, or to fulfill any of the obligations herein undertaken, or undertaken or contained *891 in any form of security at any time granted to secure this note, shall, at the option of the holder hereof, mature all remaining installments, and the unpaid balance due on this note and all delinquency and/or deferral charges due hereon shall immediately become due and payable, all without demand or notice or a putting in default; and the holder hereof may accept all collateral pledged in full satisfaction of the obligation, or enforce, by suit or otherwise, after crediting the obligation with such rebate as may be required by the Louisiana Consumer Credit Law, payment of the entire unpaid debt due hereon, including lawful costs and attorney's fees, all at the option of the holder hereof.
At the time Mr. and Mrs. Neucere obtained the loan, they executed a Federal Disclosure Statement that stated PIC had issued five checks totalling $16,712.50 to five of their creditors and issued a check for $293.17 to them.
Initially the Neuceres made varying, sporadic payments on the loan. After they were allegedly in default for ten days or more on installments due on September 20, October 20 and November 20, 1974, PIC exercised its right on December 5, 1974 to convert the Neuceres' discounted loan to an interest bearing loan. Under the terms of the loan agreement and in accordance with the Louisiana Consumer Credit Law, R.S. 9:3510 et seq., PIC allegedly calculated the rebate due upon conversion, applied the rebate, and began charging the Neuceres interest on the outstanding balance. PIC contends it sent a letter dated December 5, 1974 to the Neuceres informing them that it converted the loan to an interest bearing loan. After allegedly converting the loan PIC received payments which it credited first to interest or late charges, and then to the principal.
The Neuceres continued to make payments on the loan and by September 28, 1983 had reduced the balance to $14,164.88. On December 5, 1983, the balance had increased to $18,889.62. Despite more payments, on August 14, 1984 the balance was $19,613.07. Alarmed by this, the Neuceres retained the services of an attorney.
The Neuceres' attorney sent a letter dated August 30, 1984 to PIC and its agent for service of process informing them that the letter was notice that PIC was in violation of the Louisiana Consumer Credit Law and requesting PIC to provide either a written explanation for the increasing balance or a credit to the Neuceres' account within thirty days. On September 4, 1984 PIC, through its executive vice president, Joseph N. Bruno, sent a letter to the Neuceres' attorney denying that PIC had violated any provisions of the Louisiana Consumer Credit Law and requesting that any further correspondence be forwarded to its attorneys. Despite this denial of the claimed violations, the Neuceres made five more payments on the loan, the last of which was made on April 23, 1985.
When the Neuceres failed to make any payments after April 23, 1985, PIC filed suit on September 24, 1985, alleging that $7,810.00 was the net principal balance due on the loan. The Neuceres filed an answer and reconventional demand on October 18, 1985 alleging that PIC had violated the Louisiana Consumer Credit Law and the Unfair Trade Practices and Consumer Protection Law, R.S. 51:1401 et seq. On the day of trial in the matter, PIC filed an exception of no cause or right of action and motion in limine, arguing that PIC was exempt from the provisions of R.S. 51:1401 et seq. because it was a financial institution subject to the jurisdiction of the state bank commissioner, R.S. 51:1406 and R.S. 6:451. After a trial on the merits, the trial judge overruled PIC's exception of no cause or right of action and motion in limine, dismissed PIC's main demand and entered judgment in favor of the Neuceres on their reconventional demand.
The judgment, in pertinent part, provided:

*892
Our calculations of civil statutory penalties are as follows:
Total Payments to Preferred by Neuceres $21,649.20
Funds loaned to Neuceres w/o interest 17,000.00
 ____________
Actual Interest collected by Preferred 4,649.20
Triple x interest 13,937.60
Balance Due on the Loan - 7,810.00
 __________
Due as Statutory Damages $ 6,127.60
This Court has carefully considered the testimony of Mr. Neucere as well as that of the
only child and sole heir of the late Mrs. Gloria Galland Neucere, Ms. Rebecca Ann
Neucere Lagman, and this Court concludes that our law and jurisprudence both contemplate
and permit the awarding of actual damages for pain, suffering and mental anguish
under the circumstances of this cause. Based on the uncontradicted and unchallenged
testimony of the plaintiffs-in-reconvention, this Court finds that an award of $5,000.00, to
each is indicated.
 Bank of N.O. and Trust Co. vs. Philips
 415 So.2d 973 (1982)
This Court further finds that our Fourth Circuit Court of Appeal as well as Louisiana
Supreme Court have decreed that where a violation"not-in-good-faith" has been found,
attorneys fee are mandated.
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that there is judgment
herein in favor of the defendants and plaintiffs-in-Reconvention, MRS. REBECCA ANN
NEUCERE LAGMAN and CLEVELAND NEUCERE, and against the original plaintiff
and defendant-in-Reconvention, PREFERRED INVESTMENT CORPORATION, in the
full sum as follows:
1  MRS. REBECCA ANN NEUCERE LAGMAN - $5,000.00
together with legal interest from the date of judicial demand until paid
2  CLEVELAND NEUCERE
 Mental Anguish, etc. $5,000.00
 Statutory Damages 6,127.60
together with legal interest from the date of judicial demand until paid
3  Attorneys fees of $7,500.00
4  All costs of these proceedings.

On appeal, PIC urged eight assignments of error. Assignments one and two allege error by the district court in awarding recovery for pain, suffering and mental anguish under the Unfair Trade Practices and Consumer Protection Law, R.S. 51:1401 et seq. and in admitting and considering irrelevant and prejudicial evidence in support of that item of damages. We agree.
R.S. 51:1406 provides:
Exemptions
The provisions of this chapter shall not apply to:
(1) Actions or transactions subject to the jurisdiction of ... the state bank commissioner (now the commissioner of financial institutions)
. . . . .
In its petition PIC alleged that it was a Louisiana corporation licensed under R.S. 9:3510, et seq. The commissioner of financial institutions (formerly the state bank commissioner) has the regulatory power over the actions of such a licensee. R.S. 9:3554 et seq.
Defendants did not file the dilatory exception required by C.C.P. art. 855 to challenge the procedural capacity of PIC to sue as a licensee under R.S. 9:3510. Further, defendants, in their answer and reconventional demand alleged:

I.
"The Preferred Investment Corporation is a domestic corporation, licensed to and *893 doing business as a lending agency under the provisions of La.R.S. 9:3510 et seq."
Accordingly, the status of PIC as a licensee under R.S. 9:3510 was judicially admitted by defendants and required no further proof.
There can be no dispute that the Neuceres' claim arose out of a loan transaction subject to the supervisory jurisdiction of the commissioner of financial institutions. As such, this transaction was exempt from the provision of R.S. 51:1401. Scott v. Bank of Coushatta, 512 So.2d 356 (La.1987); State Bank of Commerce v. Demco of La., Inc., 483 So.2d 1119 (La. App. 5th Cir.1986).
In awarding damages of $5,000.00, each, to Rebecca Lagman and Cleveland Neucere for pain, suffering and mental anguish, the court erroneously relied upon the case of Bank of New Orleans & Trust Co. v. Phillips, 415 So.2d 973 (La.App. 4th Cir.1982) as authority for these awards. In that case the Bank of New Orleans was denied the exemption of R.S. 51:1406 because the subject transaction, i.e., a credit card transaction, was not subject to the jurisdiction of the state bank commissioner, having been removed from his supervision by legislative act. For that reason the court held that the unfair trade practice claim arising out of a credit card transaction, although naming the bank as the defendant, was properly brought under R.S. 51:1401.
The Neuceres made no assertion that the actions of PIC were not in connection with a supervised loan transaction. Since this transaction, unlike Bank of New Orleans & Trust Co. v. Phillips, supra was subject to the jurisdiction of the commissioner of financial institutions, the exemption of R.S. 51:1406 applied. Accordingly, the exception of no cause of action for a claim under R.S. 51:1401 should have been maintained. Since R.S. 9:3551 et seq. does not provide for damages for mental anguish, it was error for the trial court to award such damages.
In its fourth assignment of error, PIC urges that the Neuceres' claim under R.S. 9:3552 was perempted and should be dismissed. Although appellant could have filed an exception of no cause of action in this appeal, C.C.P. art. 2163, PIC failed to do so but urges our court to do so, on our own motion, as authorized by C.C.P. art. 927, See Davis v. Sewerage & Water Board, 469 So.2d 1144 (La.App. 4th Cir. 1985).
R.S. 9:3552(E) provides:
E. Any civil action under this section must be brought within sixty days of final payment of the consumer credit contract, or in the case of a revolving loan or revolving charge account, within one year of the date of the violation.
We find no case in our jurisprudence that has declared whether the sixty day period of R.S. 9:3552(E) is peremptive or prescriptive, although the First Circuit treated a late claim as prescriptive in Fidelity Funds, Inc. v. Price, 491 So.2d 681 (La. App. 1st Cir.1986). However, the peremption issue was not discussed in the opinion and we must presume that it was not raised as an issue on appeal. Accordingly, we do not find that Fidelity Funds, Inc. v. Price, supra, is dispositive of this issue.
Although the legal effects and the justification for the concept of peremption have been the subject of study and criticism by legal scholars, (See Comment, Legal Rights and the Passage of Time, 41 La. L.Rev. 220, 252 (1980) and Comment, Prescription and Peremptionthe 1982 Revision of the Louisiana Civil Code, 58 Tulane L.Rev. 593-617, (1983-84), the jurisprudential principle of peremption was formalized and incorporated into our civil code in 1982 by articles 3458 through 3461 which provide in part:
Art. 3458. Peremption; effect
Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period.
Art. 3461. Renunciation, interruption, or suspension ineffective
Peremption may not be renounced, interrupted, or suspended
*894 Act 454 of the Regular Session of 1972, the Louisiana Consumer Credit Law, R.S. 9:3510 through R.S. 9:3568, has no language in its title or body which defines the time to commence a civil action under section 9:3551 as either prescriptive or peremptive. The leading case on peremption is Guillory v. Avoyelles Ry. Co., 104 La. 11, 28 So. 899 (1900), which stated:
When a statute creates a right of action, and stipulates the delay within which that right is to be executed, the delay thus fixed is not, properly speaking, one of prescription, but it is one of peremption. Statutes of peremption destroy the cause of action itself. That is to say, after the limit of time expires the cause of action no longer exists; it is lost. 28 So. at 901.
In Flowers, Inc. v. Rausch, 364 So.2d 928 (La.1978), the Supreme Court defined peremption as a form of prescription that does not admit of suspension or interruption. In Pounds v. Schori, 377 So.2d 1195 (La.1980) the Supreme Court held that the six (6) months time limitation within which to file a suit to disavow paternity under C.C. art. 191 was peremptive. The court, after noting that the six (6) months prescriptive period was a short one, declared that each case should be considered separately on its merits, bearing in mind that the main consideration is the purpose sought to be achieved by the particular limitation period involved.
In Reliable Credit Corp. v. Smith, 418 So.2d 1311 (La.1982) the Supreme Court stated at page 1314:
The Louisiana Consumer Credit Law, R.S. 9:3510 et seq., was enacted to protect unwary consumers from the harsh impact of credit abuses by providing a comprehensive scheme of rate regulation. By regulating those finance charges that may be imposed in a credit transaction, it is clear that the legislature intended not only to deter unscrupulous credit practices, but also to afford the injured consumer with an affirmative vindication of his rights. See "Symposium: Louisiana's New Consumer Protection Legislation". 34 La.L.Rev. 597 (1974-75).
In Shoemaker v. Fidelity Finance, Inc., 464 So.2d 1005 (La.App. 1st Cir.1985), writ denied, 467 So.2d 1130 (La.1985), the court stated: "La.R.S. 9:3552 is penal in nature and must therefore be given strict construction."
The same court, in Fidelity Funds, Inc. v. Price, supra, held that R.S. 9:3552(E) required suit to be brought within sixty (60) days of the final payment under the terms of the contract or within sixty (60) days of the earlier acceleration because of default in timely payment of an installment. The court refused to approve the claim by the debtor that the sixty (60) days within which to file suit did not begin to run until the date of her final payment on the contract, not the earlier acceleration date. In rejecting this argument the court stated:
Mrs. Price argues that the prescriptive period should not begin to run until after her final payment on the contract is made. Prescriptive periods are established by the legislature to extinguish stale claims. The very short period provided in LSA-R.S. 9:3552 manifests the legislative intent to have claims arising out of Louisiana Consumer Credit Law dealt with quickly. Some debtors might never pay off their consumer credit contracts, and under Mrs. Price's interpretation, their claims would never prescribe. This would obviously undermine the legislature's intent. 491 So.2d at 684.
Although the court treated the sixty (60) day time period as prescriptive, there was no discussion of the peremption issue and we presume it was not raised or addressed.
Our review of the Consumer Credit Law (C.C.L.) and the cases interpreting it lead us to the following conclusions:
(1) The C.C.L. was enacted to protect unwary consumers from credit abuses.
(2) The legislature intended to deter unscrupulous credit practices and to afford the injured consumer a means of legal redress.
*895 (3) In furtherance of these objectives the legislature created new remedies and penalties both civil and criminal.
(4) In order to protect lenders from abuse of these new and drastic penalties, i.e., forfeiture of interest plus three times the amount of the finance charge, and attorney's fees, the legislature, in the same statute, enacted a time period within which the aggrieved consumer must file suit.
(5) This time period, i.e., within sixty (60) days of final payment of the consumer credit contract, is shorter than any other prescriptive period in the Civil Code and manifests the legislative intent to have claims arising out of the C.C.L. dealt with quickly.
(6) The sixty (60) day time period within which suit must be filed meets the criteria of C.C. art. 3458 and the legal principles enunciated in Guillory v. Avoyelles Ry. Co., supra, Flowers, Inc. v. Rausch, supra and Pounds v. Schori, supra, and in Hebert v. Doctors Memorial Hosp., 486 So.2d 717 (La.1986). Accordingly, we hold that the time limitation set by R.S. 9:3552(E) is one of peremption rather than of prescription.
In this case it is undisputed that the final installment of the Neuceres' mortgage note was due and payable on March 20, 1984. The Neuceres' reconventional demand was not filed until October 18, 1985, more than one and one-half years after the date the final installment payment was due, and more than five months after the Neuceres made their last payment to PIC. Accordingly, any claim the Neuceres may have had under the Consumer Credit Law had perempted long before the filing of their reconventional demand, and, this court, on its own motion, may dismiss the perempted claim. C.C.P. art. 927. Davis v. Sewerage & Water Board, supra. Because we find that the claims asserted by defendants in their reconventional demand have been perempted, their reconventional demand is dismissed.
Assuming, arguendo, that the time limitation set by R.S. 9:3552(E) is prescriptive rather than peremptive, we find, on the merits, that the judgment in favor of the Neuceres' should be reversed for the following reasons. The trial judge found that PIC had committed the following violations of the Louisiana Consumer Credit Law:
1) After completing the Federal Disclosure Statement, PIC failed to refund the Neuceres' $293.17, the balance remaining from the loan proceeds after paying their creditors.
2) PIC failed to pay the Neuceres' creditors immediately after they obtained the loan.
3) PIC allowed the Neuceres to customarily make payments on a weekly, biweekly or monthly basis, failing to establish a rational payment schedule.
4) After converting the discounted loan to an interest bearing loan, PIC failed to make the required rebate in accordance with LSA-R.S. 9:3525.
5) PIC acted in bad faith when it failed to take remedial action after receiving notice of the violations in August of 1984.
After reviewing the record in this case, we find the trial judge's findings of fact and conclusions of law are clearly wrong and manifestly erroneous.
Counsel for the Neuceres introduced into evidence at trial the Federal Disclosure Statement signed by Cleveland and Gloria Neucere on March 19, 1974. The statement read in pertinent part:

Checks issued-payable to:
1st Homestead $3,540.30
John A. Beninate $9,467.29
All State Credit $ 494.88
Household Finance $2,616.86
Western Auto $ 300.00
Cleveland Neucere $ 293.17

On direct examination, counsel presented Cleveland Neucere with the signed Federal Disclosure Statement and asked him whether he had, in fact, received a check from PIC in the amount of $293.17 on March 19, 1974. Mr. Neucere denied that he had ever received a check or cash for that amount from PIC. Yet, when asked whether he had signed the bottom line of the blue document, the Truth in Lending or Federal Disclosure Statement, Mr. Neucere admitted that he recognized the signatures *896 as being those of his wife and him. On cross-examination by PIC's counsel, Mr. Neucere stated at one point that he had signed the "blue one" but at another point testified "I don't remember signing that blue paper." Yet Neucere also testified that PIC had in fact paid the amounts owed to his creditors. Further, the response to a supplemental pre-trial order filed by the Neuceres specifically states:
"This consumer credit transaction was fraudulent from its inception. PIC's records will show that checks were issued payable to:

1st Homestead $3,540.30
John A. Beninate 9,467.29
All State Credit 494.88
Household Finance 2,616.86
Western Auto 300.00
Cleveland Neucere 293.17
 __________
 $16,712.50

The evidence will show that to be completely false. The only check issued was for $293.17, to Cleveland Neucere." [Emphasis Ours]
Neither in their original reconventional demand nor in their supplemental reconventional demand did the Neuceres allege that PIC had failed to issue them the check for $293.17 representing the remaining balance of the loan proceeds due them after PIC had paid their creditors as evidenced by the Federal Disclosure Statement. It was not until trial that the Neuceres raised this allegation.
Because the Neuceres are alleging violations under the Louisiana Consumer Credit Law, they had the burden of proving at trial by a preponderance of the evidence that PIC had committed the alleged violation under the statute. The only proof offered by the Neuceres that PIC had not given them a check of $293.17 at the loan closing was the testimony of Cleveland Neucere. Considering Neucere's conflicting testimony, his failure to allege nonreceipt of the $293.17 check in either his original or supplemental reconventional demand, his judicial admission of receipt of the check in the pre-trial order, and his signature on the Federal Disclosure Statement which showed his receipt of the check, we find that the Neuceres failed to sustain their burden of proving that they did not receive the $293.17 check from PIC at the loan closing on March 19, 1974.
Although credibility determinations are properly the province of the trial judge, the documentary and other evidence in this case is so overwhelming that we are obliged to find that the trial judge was clearly wrong in relying on the conflicting testimony of Neucere in the face of all of the contradictory evidence he had before him. Accordingly, we conclude the trial judge was clearly wrong in finding that PIC violated the Louisiana Consumer Protection Law by failing to pay the Neuceres the remaining balance of the loan proceeds after payment of his creditors.
As to the trial judge's finding that PIC violated the Consumer Protection Law by failing to pay the Neuceres' creditors immediately after they made the discounted loan, there is no evidence in the record to support this finding. Mr. Neucere admitted that PIC had paid his creditors and there was no evidence introduced by Neucere to prove otherwise. Specifically, Neucere did not subpoena nor did he produce at trial any creditor to testify to the existence of any outstanding obligation owed by Neucere, nor did Neucere introduce any documentary evidence of a claim being made upon him by a creditor listed in the financial disclosure statement. Accordingly, the finding by the trial court that PIC had failed to pay Neucere's creditors was unsupported by the record and was clearly wrong.
Appellant urges, and we agree, that the trial judge erred, as a matter of law, in his interpretation of La.R.S. 9:3516(3), which states:
(3) "Amount financed" in consumer loans means the total of the following items to the extent that payment is deferred:
(a) the amount of cash or its equivalent which will be paid to the consumer or for his account or to another person on his behalf including that paid or to be paid by the lender pursuant to an agreement with the consumer to discharge a mortgage, *897 lien or privilege on the property securing the loan, ...
The statute permits the lender to include in the "amount financed" amounts that the lender will pay for the borrower's account, whether or not those funds are advanced immediately. Accordingly, in the absence of any proof that Neucere's creditors' claims were unpaid, it was error for the trial judge to conclude that payment to any creditor over a period of time was a violation of the Consumer Credit Law.
The evidence in the record indicates that from the inception of the loan, the Neuceres made varying payments on a weekly, bi-weekly or monthly basis. The schedule payment cards on which PIC recorded the Neuceres' payments admitted into evidence reflect that although the Neuceres made payments on a weekly basis, the total payments were satisfied for the months of April, May and June of 1974. The Neuceres fell behind on their payments in July of 1974 and, after that date, they failed to establish a consistent payment schedule. PIC continued to accept the late payments, crediting the entire amount of each payment to the principal balance of the loan. It was in November of 1975 that PIC accepted a late payment in the amount of $150.00 and, for the first time, imposed the Neuceres a $5.00 delinquency fee on the payment that was past due on August 20, 1975. PIC credited the remaining $145.00 of the balance to the principal. Thereafter through November of 1980, with each late payment PIC charged a delinquency fee of $5.00. The trial judge found that PIC's failure to establish a rational payment schedule for the Neuceres and its acceptance of the late payments amounted to violation of LSA-R.S. 9:3552. We disagree.
LSA-R.S. 9:3527[2] provides in part:
Maximum delinquency charged
A. The parties to a consumer credit transaction may contract for the payment of a delinquency charge on any installment not paid in full within ten days after its scheduled or deferred due date in an amount not exceeding the greater of:
(1) Five percent of the unpaid amount of the installment but not exceeding fifteen dollars; or
(2) The deferral charge that would be permitted to defer the unpaid amount of the installment for the period that it is delinquent.
Further, the terms of the installment note signed by the parties expressly provided:
In the event that any installment of this note is not paid in full within ten days after its scheduled or deferred due date, the obligors hereunder agree to pay a delinquency charge in an amount not exceeding the greater of (a) five per cent of the unpaid amount of the installment but not exceeding $5.00, or (b) the deferral charge that would be permitted to defer the unpaid amount of the installment for the period that it was delinquent.
Clearly, from the terms of the loan agreement and the statute, there is nothing which precluded PIC from accepting late payments from the Neuceres and from lawfully assessing the delinquent fees.
The trial judge also found that PIC violated the Louisiana Consumer protection Law when it converted the Neuceres' discounted loan to an interest bearing loan without making the required rebate in accordance with the statute.
LSA-9:3525(C)[3] expressly provides:
C. If two installments or parts thereof of a precomputed consumer credit transaction are in default for ten days or more, the extender of credit may elect to convert the precomputed consumer credit transaction to one in which the loan finance charge or credit service charge is *898 based on unpaid balances. In this event he shall make a rebate pursuant to the provisions on rebate upon prepayment as of the maturity date of a delinquent installment, and thereafter may make a loan finance charge or credit service charge as authorized by this Part. The amount of the rebate shall not be reduced by the amount of any minimum loan finance charge or minimum credit service charge as provided in Sections 3519(E) and 3520(B); however, the extender of credit may deduct a prepayment charge as provided in Section 3528. If the extender of credit proceeds under this Subsection, no further delinquency or deferral charges shall be made.
At trial and on appeal, PIC contends that it lawfully converted the discounted loan to an interest bearing one, calculating the required rebate in December of 1974 after the Neuceres were late on their payments due September 20, October 20 and November 20, 1974. However, the Neuceres contend the conversion took place in December of 1983 and that PIC failed to make the rebate in accordance with the statute.
In support of its position, PIC introduced into evidence a copy of a letter dated December 5, 1974 that Michael A. Bruno, then president of PIC, had sent to Mr. and Mrs. Neucere informing them that their loan was converted to an interest bearing loan because they were $267.28 in arrears and that the precomputed interest was rebated according to the Rule of 78ths. The copy of the letter did not bear Bruno's signature and there was no evidence to indicate that it had been sent by certified mail or was ever received. However, Doris Bruno, PIC's office manager, testified that she vaguely remembered typing the letter in 1974 but that she was almost certain she did because it had her initials on it and had been placed in the Neuceres file in accordance with PIC's office procedures.
The trial judge considered the letter and Doris Bruno's testimony but concluded that this evidence was neither credible nor sufficient to prove that PIC converted the Neuceres' loan and rebated the interest on their account in December of 1974. The judge also concluded the evidence was insufficient to prove the Neuceres defaulted on their loan as of December 5, 1974.
Jesse Bruno, a cashier for PIC, testified that she posted the payments made to the Neucere account. According to her, PIC kept two sets of books on the Neucere account, one set as if the loan was interest bearing and the other as if it were a discounted loan. She further testified that PIC converted the Neucere loan to an interest bearing loan in December of 1974 but that the Neuceres' payment book reflected the balance of the discounted loan. The schedule payment cards of the Neucere account which were introduced into evidence show that the loan was converted to an interest bearing loan on December 5, 1983. The required rebate is also reflected on the payment cards. PIC introduced into evidence a computer printout based on the Neucere account which showed that the loan was converted as of December 15, 1974 and that the interest rebate was calculated according to the Rule of 78ths. Both the schedule payment cards and the computer printout reflect that more than two installments were in default for ten days or more on the loan as of December 1974.
After reviewing the evidence in the record, we find the trial judge was clearly wrong in finding that the Neuceres had not defaulted on their loan as of December 5, 1974.
As to whether PIC actually converted the discounted loan to an interest bearing one in December of 1974 or in December of 1983, the issue is moot. Clearly, PIC, in accordance with LSA-R.S. 9:3525(C) could have elected to convert the precomputed credit transaction to an interest bearing loan in December of 1974 if it chose to do so. In the end, however, PIC sued the Neuceres for the remaining balance based on the discounted loan.
The evidence in the record shows that the total amount of the discounted loan was $29,269.20. Over the period of nearly 11 years, the Neceures' total payments on the loan equaled $21,649.20. In April 1985, after the Neuceres made their last payment, the loan balance was $7,620.00. After *899 the Neuceres failed to make any more payments, PIC filed suit in September 1985 for the $7,620.00 balance in addition to $190.00 in late charges or for a total of $7,810.00. Had PIC elected to sue the Neuceres for the remaining balance on an interest bearing loan converted in December, 1974, the amount would have included $14,002.30 in principal in addition to $1,857.38 in accrued interest or for a total of $15,859.68. In any event, PIC chose not to but rather sued the Neuceres for the remaining balance on the discounted loan.
The trial judge also found that PIC acted in "bad faith", when it failed to remedy an alleged error in the Neuceres' account within thirty days after receiving notice of the alleged violation.
The Neuceres' attorney sent a letter to PIC on August 5, 1984, inquiring why his clients were charged interest on a precomputed transaction. The letter also requested that PIC correct the error within thirty days pursuant to the Louisiana Consumer Credit Law.
Since we find that PIC was in full compliance with the C.C.L., its denial of any wrongdoing was not an action in bad faith and the trial judge was clearly wrong in so holding.
For the above reasons, we find that the trial judge was clearly wrong in granting judgment to the Neuceres on their reconventional demand and in dismissing plaintiff's main demand.
Although PIC. was authorized by law to convert the discounted loan to an interest bearing loan after making the appropriate rebate and, as a result thereof, the balance owed on the note would have been $15,859.68, PIC. elected to sue for the smaller amount as if the discounted loan had never been converted to an interest bearing loan, which action was to the manifest benefit of the debtors.
In support of the main demand PIC. introduced ample evidence to prove that:
(1) The total amount of the discounted loan was $29,269.20.
(2) Over a period of nearly eleven (11) years, the total payments on the loan added up to $21,649.20, leaving a loan balance of $7,620.00.
(3) PIC was entitled to late charges of $190.00 as provided in the contract, making the total amount owed the sum of $7,810.00.
For the foregoing reasons the judgment of the trial court is reversed, and we render judgment in favor of Preferred Investment Corporation and against Cleveland Neucere and Rebecca Neucere Lagman (1) dismissing defendants' reconventional demand and (2) granting judgment in favor of Preferred Investment Corp. and against Cleveland Neucere and Rebecca Lagman Neucere in the full sum of $7,810.00, together with interest thereon at twelve (12%) percent per annum from March 20, 1984 to March 20, 1985 and thereafter at eight (8%) percent per annum until paid, plus twenty-five (25%) percent attorney's fees on principal and interest, and recognizing plaintiff's lien and privilege on the mortgage property described in MOB 218, Folio 371 of the mortgage records of Orleans Parish.
All costs in the trial court and of this appeal are assessed against defendants.
REVERSED AND RENDERED.
BARRY, J., concurs with reasons
BARRY, Judge, concurs with reasons.
The legislature intended that the Louisiana Consumer Credit Law should deter unscrupulous credit practices. Reliable Credit Corp. v. Smith, 418 So.2d 1311 (La. 1982).
The plaintiff took advantage of its unsophsicated debtors. The trial judge's reasons reflect his aggravation at their tactics.
These facts convince me that the 60 day period in R.S. 9:3552(E) should be considered prescriptive, not peremptive. The First Circuit treated the statute as prescriptive in Fidelity Funds, Inc. v. Price, 491 So.2d 681 (La.App. 1st Cir.1986).
NOTES
[1] The trial court signed an order on December 17, 1987 providing that Rebecca Neucere Lagman be substituted as a plaintiff in reconvention in place of her mother, Gloria Neucere.
[2] R.S. 9:3527 was formerly R.S. 9:3525. It was redesignated as R.S. 9:3527 on authority of Acts 1986, No. 584, Sec. 5 and R.S. 24:253.
[3] This statute was redesignated as R.S. 9:3527 in 1986 on authority of Acts 1986, No. 584, Sec. 5 and R.S. 24:253. The 1986 amendment substituted "into a simple interest transaction" for "to one in which the loan finance charge or credit service charge is based on unpaid balances" at the end of the first sentence in subsection C.