ON REHEARING
IiVICTORY, Justice*
We granted the defendant’s request for rehearing in this ease to determine whether the sixty (60) day period for filing suit under LSA-R.S. 9:3552(E) began to run on the date plaintiffs made their actual final payment on the consumer credit contract, as the trial court held, or on the date the consumer credit contract specified that final payment was due, as the appellate court held. We hold that the 60-day period of LSA-R.S. 9:3552(E) began to run on the date actual final payment was made; therefore, this action has prescribed.
FACTS AND PROCEDURAL HISTORY
On March 11, 1981, the plaintiffs, Willie J. Shelton and Lucy Bradford Shelton (the *592 “Sheltons”), borrowed $10,194.00 from Louisiana Financial Associates. The Sheltons signed a promissory note for $83,458.00 to be paid in 120 monthly installments of $278.82 each, commencing April 16, 1981, with the final payment due on March 16, 1991. As security for the loan, they gave a mortgage on their home. Included in the amount of the loan was the purchase of a credit life |2insurance policy for $8,345.84. The promissory note was assigned to defendant, Chrysler First Financial Services Corporation (“Chrysler”).
On December 16, 1985, the Sheltons made the final payment on the loan, five years and three months early. On July 21, 1989, the Sheltons brought this action alleging that Chrysler committed an “intentional violation” under LSA-R.S. 9:3552(A)(l)(b) by failing to obtain the credit life insurance, failing to notify the Sheltons that the credit life insurance had not been obtained, and failing to provide the Sheltons with a rebate for the unused portion of the credit life insurance.
After trial on the merits, the trial court sustained Chrysler’s exception of prescription and dismissed the Sheltons’ action with prejudice. The First Circuit Court of Appeal held that the claim had not prescribed because prescription did not begin to run until the date in which the last regularly scheduled installment would have been due under the consumer credit contract. Shelton v. Chrysler First Financial Services Corporation, 94-1921 (La.App. 1st Cir. 5/5/95), 655 So.2d 529, 530. However, the court of appeal affirmed the dismissal of the Shelton’s action on other grounds, holding that the record contained no evidence of compliance with LSA-R.S. 9:3552(A)(l)(a)(ii)’s requirement for notice to the creditor’s agent for service of process. 655 So.2d at 531.
The Sheltons filed an application for a writ of certiorari, arguing that Chrysler had admitted to receipt of notice in its answer to the petition. On November 13, 1995, we granted the writ and issued a per curiam opinion, reversing the judgment of the court of appeal, finding that “[wjhen the creditor admits actual notice, the copy requirement [under LSA-R.S. 9:3552(A)(l)(a) ] is superfluous.” 95-1869 (La. 11/13/95), 662 So.2d 453. Further, we held that “[a]s to prescription, the court of |3appeal correctly noted that prescription did not begin to run until the contract date of final payment.” Id.
We granted Chrysler’s application for rehearing on February 2, 1996 to consider whether the 60-day period of LSA-R.S. 9:3552(E) began to run on the date the Shel-tons made their actual final payment or on the date when the last installment was due pursuant to the terms of the consumer credit contract. 95-1869 (La. 2/2/96), 666 So.2d 1095.
DISCUSSION
“The Louisiana Consumer Credit Law [LCCL], R.S. 9:3510, et seq., was enacted to protect unwary consumers from the harsh impact of credit abuses by providing a comprehensive scheme of rate regulation.” Reliable Credit Corp. v. Smith, 418 So.2d 1311, 1314 (La.1982). The LCCL provides severe penalties for violations by the creditor. Under LSA-R.S. 9:3552(A)(l)(a), when a creditor commits an intentional violation of the LCCL, the “consumer is entitled to a refund of all loan finance charges or credit service charges and has the right to recover three times the amount of such loan finance charge or credit service charge together with reasonable attorney’s fees”. LSA-R.S. 9:3552(A)(l)(a).
The statute at issue provides that “[a]ny civil action under this section must be brought within sixty days of final payment of the consumer credit contract, or in the ease of a revolving loan or revolving charge account, within one year of the date of the violation.” LSA-R.S. 9:3552(E).[1]
LSince the Legislature did not define the term “final payment of the consumer credit contract” in the statute, we must follow the basic interpretation principles of the Civil Code. Article 9 provides that “[w]hen a law is clear and unambiguous and its application *593 does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.” LSA-C.C. art. 9. Ambiguous words must be interpreted in the “context in which they occur and the text of the law as a whole.” LSA-C.C. art. 12. Lastly, “[l]aws on the same subject matter must be interpreted in reference to each other.” LSA-C.C. art. 13.
In another section of the LCCL, LSA-R.S. 9:3522, the Legislature used the term “contractual maturity” as the date upon which creditors can begin to charge service charges not to exceed eight percent per annum. Clearly, this term means the maturity date as stated in the contract. Yet, in LSA-R.S. 9:3552(E), the Legislature used the term “final payment of the consumer credit contract.” Interpreting these terms in reference to each other under LSA-C.C. art. 13, if the Legislature had meant the final payment date as stated in the contract, it would have used the term “contractual maturity.”
This interpretation is in accordance with the First Circuit Court of Appeal’s decision in Fidelity Funds, Inc. v. Price, 491 So.2d 681 (La.App. 1st Cir.1986). The First Circuit held that the 60-day period began to run on the date the creditor exercised its option to accelerate the note, which made the entire amount due under the note due on that date, rather than the date of final payment provided for in the note or the date of actual final payment if made after the final date provided for in the note. 491 So.2d at 685. In Fidelity Funds, the creditor properly changed the 15date of “final payment” by exercising its right to accelerate the loan upon non-payment by the debtor. Likewise, in the case at bar, the Sheltons changed the date of “final payment” by exercising their right to prepay the loan.
Further, interpreting “final payment of the consumer credit contract” as the date of actual final payment will not lead to absurd consequences under LSA-C.C. art. 9. The Sheltons suggest that if this interpretation is adopted, any consumer who prepays a debt and is due a rebate of either interest or insurance premiums may have a prescriptive period of zero days. The Sheltons base this assertion on the argument that any rebate should be figured into the payout figure by the lender and, in the unlikely event that the consumer notices that the rebate was not figured into the payout figure and requests a rebate, the consumer must then send the required notice to the creditor under LSA-R.S. 9:3552(A)(l)(a), who then has 30 days after receipt to correct the violation. The Sheltons allege that, as it is not until the creditor fails to remedy the violation after 30 days that the right of action by the consumer for penalties arises, the 60 days may have elapsed. While this may be true, the problem with the timing would not be any different if contractual maturity was the operative date for the 60-day-period. The consumer will still have to follow the same notice provisions for any violation that does not come to light until contractual maturity.
We recognize that the relationship between the 30-day notice provision and the 60-day period in which to file suit is confusing and may need to be changed by the Legislature or interpreted by this Court at some point. However, in this case, there is no need for us to address these problems with the statute because the | eSheltons clearly did not file suit within 60 days from the date of actual final payment and did not give Chrysler notice within that time period.[2]
CONCLUSION
“Final payment of the consumer credit contract” under LSA-R.S. 9:3552(E) means the date of actual final payment in the event a loan is prepaid. Accordingly, the trial court was correct in sustaining defendant’s exception of prescription.
*594 DECREE
For the reasons stated herein, our per curiam opinion of November 13, 1995 is recalled, the judgment of the court of appeal is reversed and the trial court’s judgment sustaining Chrysler’s exception of prescription and dismissing plaintiffs’ claim is reinstated.[3]
REVERSED.
LEMMON, J., concurs in part, dissents in part and assigns reasons.
JOHNSON and WATSON, JJ., dissent.

 Because of the vacancy created by the resignation of Dennis, J., now a judge on the United States Court of Appeals for the Fifth Circuit, there was no justice designated “not on panel” under Rule IV, Part 2, Sec. 3. Panel included Chief Justice Calogero and Justices Marcus, Watson, Lemmon, Kimball, Johnson and Victory.

. Under LSA-R.S. 9:3552(A), the consumer must also give the creditor 30 days written notice of a violation.

. Even applying the doctrine of contra non va-lentum to the facts of this case, plaintiffs’ cause of action is prescribed. Assuming that prescription did not begin to run until January 25, 1986, the date plaintiffs became aware that no insurance had ever been purchased, plaintiffs did not file this suit until July, 1989, more than 60 days from that date. Thus, under the 60-day prescriptive period set forth in LSA-R.S. 9:3552, the last day plaintiffs could have filed this suit timely was March 26, 1986.

. As we have ruled on the prescription issue, it is unnecessaiy for us to consider defendant's second and third assignments of error, i.e. that this Court erred in finding that proper notice was given under LSA-R.S. 9:3552, and that this Court erred in failing to determine that Chrysler is not a party against whom a liberal interpretation of the LCCL should apply.