661 So.2d 1035 (1995)
FLEMING IRRIGATION, INC., Plaintiff-Appellee,
v.
PIONEER BANK & TRUST CO., Defendant-Appellant.
No. 27,262-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1995.
Writ Denied December 8, 1995.
*1036 Wiener, Weiss, Madison & Howell by James F. Howell and Jeffrey W. Weiss, Shreveport, and Mary E. Arceneaux, Shreveport, for appellant.
Comegys, Lawrence, Jones, Odom & Spruiell by Wm. Paul Lawrence and Frank H. Spruiell, Shreveport, for appellee.
Before NORRIS and HIGHTOWER, JJ., and PRICE, J. Pro Tem.
HIGHTOWER, Judge.
In this lender liability action, Pioneer Bank and Trust appeals a judgment awarding plaintiff, Fleming Irrigation, Inc., damages totaling $350,000, after the jury concluded that an application for a Small Business Administration (SBA) guaranty constituted, under the provisions of the Louisiana Credit Agreement Statute, LSA-R.S. 6:1121, et seq., a written credit agreement committing the bank to complete the loan entailed. We reverse.

BACKGROUND
After not receiving full compensation from a certain job in 1988, Fleming Irrigation, Inc. ("Irrigation") found itself unable to pay creditors timely. In an effort to resolve these problems and obtain working capital for the corporation's golf course irrigation business, L.R. Fleming, Jr., the sole shareholder, approached Edward R. Campbell, a social acquaintance and president of Pioneer Bank and Trust ("Pioneer") in October 1989. Based on his personal knowledge of Fleming's financial difficulties, Campbell concluded he could not support the requested $350,000 loan, but nevertheless directed the contractor to the senior board chairman, Hugh Hansen, for an objective review of the business's posture. Following about a two-week delay, and after indicating that Pioneer would not consider the loan without an SBA guaranty, Hansen referred the prospective borrower to another bank employee in charge of processing SBA applications, Rick Osborne.
In June 1990, after compiling and attaching the necessary financial data regarding Irrigation, Osborne forwarded an application to the SBA seeking a government guaranty for eighty percent of the requested $350,000 loan.[1] (See attached relevant portions of SBA Application for Business Loan). In August, Pioneer received an approval letter from the agency; however, when the entire proposal came before the bank's loan committee,[2] the six directors unanimously rejected Irrigation's request after concluding that the business venture ultimately would not sustain repayment of the debt. Two months later, after Fleming failed to obtain the funds despite presenting the federal guaranty to at least four other Shreveport-Bossier banks, a second loan committee at *1037 Pioneer reexamined and again rejected the arrangement.
On September 23, 1991, Fleming and Irrigation filed suit against Pioneer, seeking damages due to the institution's failure to make the $350,000 loan proposed in the SBA application.[3] In averring breach of contract, tortious and fraudulent misrepresentation, negligence, and promissory estoppel, plaintiffs maintained that various bank officials made oral promises to lend the requested funds upon receipt of the SBA guaranty, and that Pioneer thereafter failed to honor that commitment. They further contended that these actions resulted in their insolvency and probable bankruptcy.[4]
Relying upon the Louisiana Credit Agreement Statute, LSA-R.S. 6:1121-1123, and asserting plaintiff's claim to be predicated entirely on alleged oral promises, Pioneer filed an exception of no cause of action and a motion for summary judgment on March 16, 1993. In response, Irrigation argued that the SBA application constituted a written credit agreement between it and the bank. Eventually, the district court opined that the issue (whether the government application constituted a credit agreement within the meaning of the statute) presented a mixed question of law and fact, thus precluding summary judgment. Even so, the trial judge sustained the exception of no cause other than "to the extent that the petition seeks relief ... afforded by [LSA-R.S. 6:1121, et seq.]."
During an extended trial, and over Pioneer's strong objections to parol evidence, plaintiff introduced testimony concerning the events surrounding the loan request, all in an effort to prove that the guaranty application constituted a written credit agreement actually committing the bank to lend the designated sum. In contrast, defendant attempted to show it informed Fleming that it would only consider the loan, i.e., submit the matter to the loan committee, after the SBA approval had been granted. The jury, even though expressing a degree of confusion on the central issue, found that a written credit agreement existed between the parties and awarded $350,000 in damages. Upon denial of its motions for JNOV and new trial, Pioneer appealed the decision with Irrigation answering. Additionally, the Louisiana Bankers Association filed an amicus curiae brief in support of defendant's position.

DISCUSSION

I. Is the SBA Application a Written Credit Agreement Under Louisiana Law?
On appeal, Pioneer asserts that, under LSA-R.S. 6:1121-1123, the SBA loan guaranty application is not a written credit agreement mutually obligating the bank to loan and the plaintiff to borrow $350,000. More specifically, appellant contends that the trial court erred, first, by failing to decide the issue as a matter of law, and, second, by admitting parol evidence whereby Irrigation sought to prove the existence of such a written agreement. We find defendant's position well taken.
Adopted by Act 531 of 1989, LSA-R.S. 6:1121-1123 precludes any action based upon an agreement to lend money, or make any other financial accommodation, unless that contract is in writing.[5] These provisions are *1038 modeled after a Minnesota statute and similar legislation in numerous other states. See, e.g., Minn.Stat.Ann. § 513.33; Fla.Stat. Ann. § 687.0304. Designed to curtail the disruptive economic effects of escalating lender liability litigation, such measures expressly prohibit actions based on oral promises to lend money or modify existing loans. See Louisiana House Commerce Committee, Minutes on House Bill No. 954 (May 18, 1989); Louisiana Senate Commerce Committee, Minutes on Senate Bill No. 485 (June 1, 1989); Pearson, Limiting Lender Liability: The Trend Toward Written Credit Agreements Statutes, 76 Minn.L.Rev. 295 (1991). Not surprisingly, inasmuch as the Louisiana legislation is relatively new, we are here faced with an issue of first impression.[6]
Parol evidence is not admissible to show a prior or contemporaneous agreement varying the terms of a written contract. LSA-C.C. Art. 1848; Central Bank v. Simmons, 595 So.2d 363 (La.App.2d Cir.1992); Pelican Homestead & Sav. Ass'n v. Airport Mini-Warehouses, Inc., 531 So.2d 524 (La. App. 5th Cir.1988). Ordinarily, the meaning and intent of the parties to a written instrument should be determined within the four corners of the document, and its terms cannot be explained or contradicted by extrinsic evidence. Brown v. Drillers, Inc., 93-1019 (La. 01/14/94), 630 So.2d 741; Billingsley v. Bach Energy Corp., 588 So.2d 786 (La. App.2d Cir.1991).
Thus, reviewing the SBA guaranty application involved in the instant case (see Attachment), we conclude that the trial judge erred in failing to grant summary judgment holding that the instrument did not constitute a written credit agreement under LSA-R.S. 6:1121-1123, and, also, in allowing plaintiff to introduce parol evidence on the issue. Very importantly, the four corners of the document in question do not show the bank obligating itself to loan $350,000 to Irrigation. At best, the lender's language, added on the third page of the form, sets forth a proposed loan which the bank would "like" to make with the assistance of the SBA. Neither does the governmental agency's standard-form language indicate, as plaintiff argues, that only an SBA guaranty stood in the way of Pioneer extending credit for the full amount involved. Obviously, in circumstances such as existed here, a lender has virtually no control over the printed forms supplied, and insisted upon, by a federal agency.
Similarly, considering the legislative purpose behind LSA-R.S. 6:1121-1123, it is entirely logical that the extent of the parties' commitment be found within the four corners of the written agreement, especially where the participants are executing the documents with a design of aiding the borrower. Cf. Trask v. Lewis, 258 So.2d 603 (La.App. 1st Cir.1972). Not only that, a writing cannot qualify as a credit agreement if parol evidence must be received in order to establish that status. Id. Instead, the written agreement must be perfect and complete within itself. Cf. Hammack v. Resolute Fire Ins. Co., 233 La. 359, 96 So.2d 612 (1957). In a lender liability action, to sanction the introduction of alleged oral promises, made by a financial institution's officers and employees prior to submitting an SBA guaranty application, would emasculate the credit agreement *1039 statute and leave a mere shell of the enactment.
Here, as previously stated, the trial court clearly erred in failing to grant summary judgment in favor of Pioneer and, also, in calling upon a jury to determine whether the SBA documents constituted a written credit agreement under the provisions of the Louisiana Credit Agreement Statute. When a contract is subject to interpretation from the four corners of the instrument, without the necessity of extrinsic evidence, that interpretation is a matter of law. Brown, supra; Wilson v. Cost Plus of Vivian, Inc., 375 So.2d 683 (La.App.2d Cir.1979).

II. Does LSA-R.S. 6:1121, et seq., Preclude the Assertion of Alternative Legal Theories in Lender Liability Actions?
By way of answer, plaintiff contends that Louisiana's credit agreement statute merely precludes causes of action based on breach of contract, while not affecting recovery under theories such as fraudulent or tortious misrepresentation, negligence, promissory estoppel, or detrimental reliance. Essentially, Irrigation contends that the alleged oral promises made by Pioneer's officers allow maintenance of the present suit, even without a written credit agreement. We disagree.
Although Louisiana courts have not addressed this issue, state and federal decisions from jurisdictions with similar enactments have. See Maynard v. Central Nat. Bank, 640 So.2d 1212 (Fla.App.2d Dist.1994); Griffiths v. Barnett Bank of Naples, 603 So.2d 690 (Fla.App.2d Dist.1992); Brenowitz v. Central Nat. Bank, 597 So.2d 340 (Fla. App.2d Dist.1992); Breckenridge Creste Apartments, Ltd. v. Citicorp Mortgage, Inc., 826 F.Supp. 460 (N.D.Ga.1993); Studdard v. George D. Warthen Bank, 207 Ga.App. 80, 427 S.E.2d 58 (1993); Pako Corp. v. Citytrust, 109 Bankr. 368 (D.Minn.1989). These holdings reflect that the applicable credit agreement statutes preclude all actions for damages (as distinguished from affirmative defenses) arising from oral promises to lend money, even when predicated on different theories of recovery. Deeming the rationale of these opinions sound, we similarly reject plaintiff's alternative demands.
Plaintiff's pleadings pose a factual dispute concerning whether the bank made oral representations that it would actually finance the proposed loan once the SBA guaranty had been finalized. Importantly too, each of Irrigation's alternative theories relies upon these alleged verbal assertions. Yet to accept such allegations as affording recovery, grounded in concepts other than breach of contract, simply provides an easy avenue for resourceful attorneys to circumvent the statute, thus defeating the legislative intent to prohibit claims stemming from hard-to-defend oral representations. See Pako Corp., supra; see also, Pearson, supra (suggesting that the Louisiana legislation is intended to prevent "end runs" around the statute's limitations). Thus, with Irrigation failing to show a valid written credit agreement, the district court erred in not dismissing the suit in its entirety.

CONCLUSION
For the reasons assigned, the trial court judgment in favor of Fleming Irrigation, Inc., is reversed. Moreover, granting Pioneer's motion for summary judgment and exception of no cause of action, we dismiss plaintiff's suit with prejudice. All costs are assessed to appellee.
REVERSED AND RENDERED.
*1040 
*1041 
*1042 
NOTES
[1] Earlier that year, a similar request concerning a $500,000 loan had been unofficially examined by the SBA's Shreveport representative, who recommended that the amount be reduced before being presented to the agency's main office in New Orleans for final review.
[2] All loans over $200,000 had to be approved by a loan committee consisting of three directors employed by the bank and three outside directors.
[3] Early in the proceedings, Pioneer purchased Fleming's interest in the suit from his bankruptcy trustee. Thereafter, the trial judge granted a motion dismissing Fleming's personal claim with prejudice while preserving the corporation's rights. Hence, Irrigation is the only remaining plaintiff.
[4] Both Fleming and Irrigation eventually initiated bankruptcy proceedings.
[5] The provisions of the enactment read:

§ 1121. Definitions
For purposes of this Chapter, the following terms shall have the following meanings:
(1) "Credit agreement" means an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation.
(2) "Creditor" means a financial institution or any other type of creditor that extends credit or extends a financial accommodation under a credit agreement with a debtor.
(3) "Debtor" means a person or entity that obtains credit or seeks a credit agreement with a creditor or who owes money to a creditor.
(4) "Financial institution" means a bank, savings and loan association, savings banks, or credit union authorized to transact business in this state.
§ 1122. Credit agreements to be in writing
A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.
§ 1123. Actions not considered agreements
A. The following actions shall not give rise to a claim that a new credit agreement is created, unless the agreement satisfies the requirements of R.S. 6:1122:
(1) The rendering of financial or other advice by a creditor to a debtor.
(2) The consultation by a creditor with a debtor.
(3) The agreement of a creditor to take or not to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under a prior credit agreement, or extending installments due under a prior credit agreement.
B. A credit agreement shall not be implied from the relationship, fiduciary, or otherwise, of the creditor and the debtor.
[6] The two Louisiana decisions confronting the credit agreement statute speak merely to issues of retroactivity. See Trans-Global Alloy Ltd. v. First Nat. Bank of Jefferson Parish, 583 So.2d 443 (La.1991); L.R. Bryant v. Heritage Life Ins. Co., 613 So.2d 1044 (La.App. 3d Cir.1993).