**JESCO CONSTRUCTION CORP.**

v.

**NATIONSBANK CORP., et al.**

No. Civ.A. 98–1657.

United States District Court,
E.D. Louisiana.

July 18, 2000.

Michael Joseph Juneau, Karen T. Bordelon, Juneau Firm, Lafayette, LA, for American Intern. Specialty Lines Ins. Co.

Peter Joseph Wanek, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, LA, Alexis J. Rogoski, Peterson & Ross, New York City, for Continental Cas. Co.

Mickey Stephens deLaup, Allison Cornelius Alleva, LeBlanc, Miranda, Warnick & Milazzo, Metairie, LA, for Royal Ins. Co of America.

George B. Hall, Jr., Jay Russell Sever, Phelps Dunbar, LLP, New Orleans, LA, for Agricultural Ins. Co. and American Alliance Ins. Co.

Joseph Maselli, Jr., Plauche, Maselli, Landry & Parkerson, LLP, New Orleans, LA, for Federal Ins. Co.

C. Michael Pfister, Duplass, Zwain & Bourgeois, Metairie, LA, Anthony S. Cox, Caron, McCormick, Constants & Wilson, Dallas, TX, for Fireman's Fund Ins. Companies and National Surety Corp.

James R. Carter, Joel Nathan Terrebonne, Porteous, Hainkel, Johnson & Sarpy, New Orleans, LA, for Indemnity Ins. Co. of North America.

Mishthi Grace Ratnesar, Thomas P. Anzelmo, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, LA, Lee Berger, Kaufman, Borgeest & Ryan, New York City, for Underwriters at Lloyd's of London.

Jon A. Gegenheimer, Edward D. Markle, Markle & Associates, APLC, New Orleans, LA, for John Shavers, movant.

Edward F. Downing, III, Gauthier & Murphy, Metairie, LA, Wendell H. Gauthier, Gauthier, Downing, LaBarre, Beiser & Dean, Metairie, LA, Jon A. Gegenheimer, Edward D. Markle, Markle & Associates, APLC, New Orleans, LA, for Ann Shavers, movant.

PORTEOUS, District Judge.

This cause came for hearing on a previous date upon the Motion of the Defendant, Banc of America Commercial

Edward F. Downing, III, Gauthier & Murphy, Metairie, LA, Wendell H. Gauthier, Gauthier, Downing, LaBarre, Beiser & Dean Metairie, LA, Jon A. Gegenheimer, Edward D. Markle, Markle & Associates, APLC, New Orleans, LA, for Jesco Const. Corp.

Gerald F. Slattery, Jr., David Ronald Dyer, Schully, Roberts, Slattery, Jaubert & Marino, New Orleans, LA, Kyle D. Schonekas, Schonekas, Winsberg, Evans & McGoey, LLC, New Orleans, LA, for NationsBank Corp., NationsCredit, NationsCredit Commercial Corp., Bank of America and Bank of America Commercial Finance Corp.

Finance Corporation, for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Having heard the arguments of counsel, and having studied the legal memoranda and exhibits submitted by the parties, the record, and the applicable law, the Court is fully advised on the premises and ready to rule.

### ORDER AND REASONS

### I. Background

The above-captioned matter was initially instituted in the State of Louisiana's Civil District Court for the Parish of Orleans by Jesco Construction Corporation ("Jesco") against three Defendants: NationsBank Corporation, NationsCredit, and NationsCredit Commercial Corporation. As a result of a merger on September 30, 1998, Banc of America Commercial Finance Corporation ("BACF" or "the bank") became the successor corporation to NationsCredit Commercial Corporation.[1] Shortly after Jesco brought suit, BACF removed the case to this Court.

In May 1997, the President of Jesco, John E. Shavers, began negotiations with the Directors and Officers of King Fisher Marine Service, Inc. ("King Fisher"), a Texas based corporation which specializes in marine services, dredging, marine construction, and marine warehousing, for the purchase of all of its stock.[2] In July 1997, Jesco entered into a letter of intent with King Fisher whereby Jesco agreed to purchase all of the stock of King Fisher for a price of $17.7 million. After entering into the letter of intent, Jesco opened loan discussions with BACF in August 1997.

The initial loan discussions began with Kellee Cappas, a vice-president of the bank. After several weeks of negotiations between Shavers and Cappas, Jesco and BACF agreed upon and executed a letter of interest.[3] That document set forth the terms of the proposed financing that BACF was considering, and in it Jesco promised, upon delivery of a deposit, to provide sufficient information to allow BACF to perform a due diligence investigation.

Much dispute exists between the parties concerning the events which took place on September 30, 1997. Without elaborating on the respective contentions of the parties, it suffices for the Court to note that at some point during that day, a letter was faxed by Cappas to Shavers. The first paragraph of that letter contains the following language:

> Based upon our preliminary review of the information you have submitted to us, we are pleased to submit this proposal along the parameters outlined below. Please understand that after completion of our due diligence, [BACF] may require alternative parameters, or may decline to offer you financing. The following is not a commitment but only an expression of our interest.

(BACF's Memorandum in Support of its Motion for Summary Judgment, Exhibit 1, p. 1). The signatures of both Cappas and Shavers appear at the end of that document. See id. at p. 5.

---

**1.** Pursuant to this Court's Order of April 23, 1999, (Doc. 37) certain Defendants were dismissed from this lawsuit for lack of personal jurisdiction. Although not entirely accurate, the Court will refer to the entity or entities with which Jesco conducted the business involved in the instant litigation simply as BACF, since BACF is the successor to the only remaining Defendant originally sued by Jesco.

**2.** The Court's recitation of the facts involved in this lawsuit is somewhat simplified, but nonetheless sufficient for purposes of resolving the motion at hand.

**3.** A letter of interest is a document customarily used by asset-based lenders, such as BACF, to formalize the commencement of negotiations for a proposed loan and to commence the analysis of the proposed loan. Jesco claims that there were multiple letters of interest involved in the negotiation between itself and BACF.

Another document also was sent by Cappas to Shavers on that date. Said document is a facsimile cover sheet containing the following four handwritten sentences:

> We can close this deal in 3 wks if we receive a total check of $35,000 tomorrow. The additional $15,000 will commence the legal documentation process. Call me or Kim Metzner with any questions. Thank you!

(BACF's Memorandum in Support of its Motion for Summary Judgment, Exhibit 10). This document bears *no* signatures.

During the weeks that followed, both Jesco and King Fisher supplied financial information, personal data, and other information requested by BACF in order to complete the loan application process. In accordance with the policies and procedures of the bank, a field examination of King Fisher was conducted by a BACF employee for the purposes of inspecting the marine operation and reviewing the company's financial data and accounting records.

The Plaintiff alleges that BACF agreed to close the loan on or before October 29, 1997. For reasons yet unknown, the loan application process stalled and was eventually terminated by Shavers. In February 1998, King Fisher was sold to another entity for $20 million.

On April 27, 1998, Jesco filed suit against BACF asserting a variety of legal theories, including: 1) breach of contract; 2) negligent misrepresentation; 3) breach of the duty of good faith and fair dealing;

4) breach of fiduciary duty; 5) detrimental reliance; and 6) unfair trade practices. BACF moved this Court for entry of Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on all of the claims raised by Jesco.[4] Jesco, of course, opposes each of BACF's arguments in favor of granting summary judgment.

## II. Legal Analysis

### A. *Law on Summary Judgment*

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655–56 (5th Cir.1996) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912–13 (5th Cir.) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysi-

---

**4.** Three other Defendants also have filed motions for summary judgment: Continental Casualty Company ("Continental"); Those Interested Underwriters at Lloyd's of London and Other Companies Participating on Certificates Numbered QA475697, QA475697A, QA475897, and QA475897A ("Underwriters"); and American International Specialty Lines Insurance Company ("AISLIC").

On May 31, 2000, it was ordered "that the parties obtain the approval of this Court before *any* further pleadings will be allowed into the record in this matter." (Doc. 236). Each of the three above-mentioned motions was filed after that date, however, neither Conti-

nental nor AISLIC requested leave of Court to file their respective motions. The *only* reason those two motions have not been stricken from the record is that Continental and AISLIC simply adopt the arguments raised in BACF's motion which is presently under consideration.

Underwriters, like Continental and AISLIC, adopt the arguments presented by BACF in its motion for summary judgment and raise an additional claim relating to spoliation of evidence. Said claim will be briefly addressed after BACF's arguments are analyzed by the Court.

cal doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir.1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 588, 106 S.Ct. 1348. Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B.  *BACF's Arguments in Support of Granting Summary Judgment*

As stated above, BACF removed the instant action to this Court from the Louisiana Civil District Court for the Parish of Orleans. Such removal was based upon the Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Therefore, the laws of the State of Louisiana shall apply to the case at hand. The Court now turns to each of the various legal theories espoused by Jesco in its "Petition for Damages and Breach of Contract."

### 1.  *Breach of Contract*

Louisiana law clearly provides that "[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, *and is signed by the creditor and the debtor.*" La.Rev.Stat. § 6:1122 (emphasis added). This statute has been referred to as the "Louisiana Credit Agreement Statute." The term "credit agreement" is defined as *"an agreement to lend* or forbear repayment of money or goods *or to other-wise extend credit,* or make any other financial accommodation." La.Rev.Stat. § 6:1121(1) (emphasis added).

As noted by the Louisiana Supreme Court, the statute above "does not address, one way or the other, any protection of unsophisticated borrowers or any exemption based on fraud, misrepresentation, promissory estoppel or other equitable theory." *Whitney Nat'l Bank v. Rockwell*, 661 So.2d 1325, 1331 (La.1995). A Louisiana Court of Appeal previously came to that same conclusion and held that the Louisiana Credit Agreement Statute "preclude[s] all actions for damages (as distinguished from affirmative defenses) arising from oral promises to lend money, *even when predicated on different theories of recovery.*" *Fleming Irrigation, Inc. v. Pioneer Bank & Trust Co.*, 661 So.2d 1035, 1039 (La.Ct.App.1995) (emphasis added). There, the court held that to accept otherwise "would emasculate the credit agreement statute and leave a mere shell of the enactment." *Id.* at 1038–39. The court concluded that affording recovery on any ground other than breach of contract would "simply provide[ ] an easy avenue for resourceful attorneys to circumvent the statute, thus defeating the legislative intent to prohibit claims stemming from hard-to-defend oral representations" to lend money or extend credit. *Id.* at 1039.

However, an analysis of the statute in question cannot end here since the Louisiana Supreme Court "declined ... to adopt a blanket rule, as the Second Circuit recently did in [*Fleming Irrigation* by] holding that the credit agreement statute precludes *all* actions for damages arising from oral credit agreements, *regardless of the theory of recovery asserted.*" *Rockwell*, 661 So.2d at 1332, n. 6. Therefore, the Louisiana Supreme Court did not decide the question of "whether there are any exceptions to the credit agreement statute, such as fraud, misrepresentation, promissory estoppel or particularly vulnerable parties." *Id.* at 1332.

In the case at hand, regardless of which version of the events which took place on September 30, 1997 is accepted as true, Jesco's claim for damages as a result of BACF's purported breach of contract cannot stand. Even if the facsimile cover sheet was sent separate from the letter of interest which was faxed by Cappas to Shavers,[5] neither document satisfies the requirements of the Louisiana Credit Agreement Statute. *See* La.Rev.Stat. § 6:1122.

▮ The "cover sheet" fails to satisfy said requirements, among other reasons, because it bears no *signatures*. The letter of interest is not a valid credit agreement because it fails to set forth the relevant terms and conditions of any agreement to lend money or extend credit. As quoted above, said letter clearly provides that BACF "may require alternative parameters, or may decline to offer [Jesco] financing," (BACF's Memorandum in Support of its Motion for Summary Judgment, Exhibit 1, p. 1). The letter "is not a commitment but only an expression of [BACF's] interest." *Id.* Even taken together, as Jesco (paradoxically) argues that they must, the letter and cover sheet do not satisfy the requirements of the Louisiana Credit Agreement Statute.

Finally, Jesco's argument that the Louisiana Credit Agreement Statute does not apply to the case at hand because BACF is not a "financial institution" is entirely without merit. Jesco directs the Court's attention to the statute itself which defines a "financial institution" as "a bank, savings and loan association, savings bank[ ], or credit union authorized to transact business in this state." La.Rev.Stat. § 6:1121(4). While Jesco is correct in that

assertion, the Court, simply directs Jesco's attention to that same statute; it applies to each and every "financial institution *or any other type of creditor* that extends credit or extends a financial accommodation under a credit agreement with a debtor." La.Rev.Stat. § 6:1121(2) (emphasis added). *See also Westside–Marrero Jeep Eagle, Inc. v. Chrysler Corp.*, 56 F.Supp.2d 694, 703 (E.D.La.1999) (Louisiana Credit Agreement Statute "extends not only to banks but [also] to institutions [that] perform banking functions, such as borrowing and lending"). Jesco's arguments to the contrary are preposterous.

Accordingly, Jesco's claim for damages under the legal theory of breech of contract must be DISMISSED. However, as mentioned above, the analysis cannot end here, and the Court now turns to the other claims brought by Jesco.

### 2. *Negligent Misrepresentation*

▮ Under Louisiana law, in order to recover for negligent misrepresentation a plaintiff must establish the following essential elements: 1) a legal duty on the part of the defendant to supply correct information to the plaintiff; 2) a breach of that duty; and 3) damages to the plaintiff as a result of his justifiable reliance upon the misrepresentation. *See Brown v. Forest Oil Corp.*, 29 F.3d 966, 969 (5th Cir. 1994) (citing *Busby v. Parish Nat'l Bank*, 464 So.2d 374, 377 (La.Ct.App.1985)).

For the sake of brevity, the Court simply will assert that BACF had a legal duty "to supply correct information" to Jesco. Any breach of that duty is what the Defendant hopes to prove. The third, somewhat elusive, element of Jesco's claim for negligent misrepresentation turns on the issue

---

5. As an aside, this Court finds it *extremely* difficult to accept Jesco's proposition that the facsimile cover sheet was sent to Shavers separate from the above-mentioned letter of interest. The Court's belief is bolstered not only by the fact that the number appearing in the blank provided to the immediate left of the phrase "PAGES (INCLUDING COVER SHEET)" appears to have been altered, but

also by the fact that no time/date stamp is present at the top of those documents. (Other faxed documents that Jesco has submitted to this Court *do* contain such markings. *See, e.g.,* Jesco's Memorandum in Opposition to BACF's Motion for Summary Judgment, Exhibits 9, 18, 29, and 42.) Be that as it may, as will be discussed below, such a determination is left to the finders of fact.

of "justifiable" or "reasonable" reliance, which shall be discussed below.[6]

### 3. Breach of the Duty of Good Faith and Fair Dealing

"Contracts must be performed in good faith." LA.CIV.CODE art.1983. In broader terms, "[g]ood faith shall govern the conduct of the obligor and the obligee in *whatever* pertains to the obligation." LA. CIV.CODE art. 1759 (emphasis added).

In support of its Motion for Summary Judgment, BACF directs this Court's attention to the fact that the United States Court of Appeals for the Fifth Circuit has held that "[t]he implied obligation to execute a contract in good faith usually modifies the express terms of the contract [but] should not be used to override or contradict them." *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) (citing *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 485 (5th Cir.1984)). BACF then argues that

> [a]gain and again, [BACF] warned Jesco in the letter of interest that it had not committed to provide the loan, and that it reserved the right to modify the terms set forth in the letter of interest or to refuse to lend Jesco any money at all.... [BACF's] implied covenant of good faith and fair dealing did not require it to waive rights it had reserved in the letter of interest.

(BACF's Memorandum in Support of its Motion for Summary Judgment, p. 39). While this Court agrees that BACF certainly had the right to modify the terms contained in the letter of interest (and although Jesco chose not to specifically address this portion of BACF's Motion for Summary Judgment in any manner whatsoever), BACF has somewhat misconstrued Jesco's claim of breach of the duty of good faith and fair dealing.

From the face of the petition it can be determined that Jesco will argue that such a breach occurred when BACF: allegedly failed "to properly notify Jesco of the loan status during negotiations with King Fisher;" allegedly failed "to properly investigate the loan;" allegedly failed "to properly follow its own policies and procedures in [the] loan process;" allegedly failed "to timely warn of [its] intention not to fund the loan;" allegedly failed "to timely administrat[e] the loan process;" and allegedly failed "to properly investigate the terms and conditions of the stock purchase transaction." (Jesco's "Petition for Damages and Breach of Contract," para. XXVI).

While the above allegations remain largely unsupported at the present time, as they may, Jesco claims that disputed issues of material fact exist regarding BACF's due diligence examination. *See* Plaintiff's Statement of Contested Material Facts, pp. 12–19. The Court holds that these issues preclude summary judgment on Jesco's claim of breach of the duty of good faith and fair dealing. A rational trier of fact could find in favor of Jesco. Accordingly, this portion of BACF's Motion for Summary Judgment must be DENIED.

### 4. Breach of Fiduciary Duty

With regard to the claim that BACF breached a fiduciary duty it allegedly owed to Jesco, the Court simply will quote the following Louisiana Revised Statute.

> No *financial institution* or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary. The fiduciary responsibility and liability of a financial institution or any officer or employee thereof shall be limited solely to performance under such a contract and shall not extend beyond the

**6.** *See infra* pp. 721–722.

scope thereof.... This Section is not limited to credit agreements and shall apply to all types of relationships to which a *financial institution* may be a party.

LA.REV.STAT. § 6:1124 (emphasis added).

■ No written agency agreement exists under which BACF specifically agrees to act and perform in the capacity of a fiduciary for Jesco. However, as noted above, BACF does not qualify as a "financial institution."[7] Using the legal maxim *inclusio unius est exclusio alterius*, this Court holds that in situations where the Louisiana Credit Agreement Statute applies, as in the case at hand,[8] any type of creditor *other than* a financial institution *may* be held liable for a breach of fiduciary duty even absent a written agency or trust agreement specifically providing for such a duty. Accordingly, this portion of BACF's Motion for Summary Judgment also must be DENIED.

### 5. *Detrimental Reliance*

The Louisiana Civil Code provides that "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." LA. CIV.CODE art.1967.

■ The burden of proof for a claim of detrimental reliance is essentially the same as that for a claim of negligent misrepresentation. "In order to recover on a claim of detrimental reliance, plaintiffs must prove: '(1) a representation by conduct or word; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance.'" *Clark v. America's Favorite Chicken Co.*, 916 F.Supp. 586, 591 (E.D.La.1996), *aff'd*, 110 F.3d 295 (5th Cir.1997) (quoting *Breaux v. Schlumberger Offshore Servs.*, 817 F.2d 1226, 1230 (5th Cir.1987)). Such a claim "must be analyzed in the *factual*

*context* from which it arose." *Id.* (emphasis added).

■ BACF noted as much. *See* BACF's Memorandum in Support of its Motion for Summary Judgment, pp. 37–38. Therefore, this Court agrees with Jesco's assertion that an issue concerning whether a person acted reasonably under given circumstances cannot be judged by summary proceedings. "Reasonableness is a very subjective term, and the Court would have to weigh evidence and the credibility of the witnesses in order to rule on the issues. Summary judgment is not the proper vehicle for this type of evaluation." (Jesco's Memorandum in Opposition to BACF's Motion for Summary Judgment, p. 37).

The members of the jury, who will be the finders fact, must decide whether Shavers, acting on behalf of Jesco, reasonably or justifiably relied on BACF's alleged promise to lend money. Underlying facts regarding Jesco's claims of detrimental reliance and negligent misrepresentation are in dispute. Accordingly, these portions of BACF's Motion for Summary Judgment must be DENIED.

### 6. *Unfair Trade Practices*

Under the Louisiana Unfair Trade Practices and Consumer Protection Law ("UTPL"), "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of *any* trade or commerce" are prohibited. LA.REV.STAT. § 51:1405(A) (emphasis added). However, the provisions of the Louisiana UTPL "shall not apply to ... [a]ctions or transactions subject to the jurisdiction of ... the commissioner of financial institutions ..., and any bank chartered by or under the authority of the United States, acting under statutory authority of this state or the United States to regulate unfair or deceptive trade practices." LA.REV.STAT. § 51:1406. Although the statute listing the exemptions is not as clear as it could

---

**7.** *See supra* p. 720.

**8.** *Id.*

be, there are two basic ways by which the UTPL would not apply to BACF; one, if BACF were subject to the jurisdiction of the Louisiana commissioner of financial institutions, or two, if it were subject to the jurisdiction of the Federal Trade Commission ("FTC") acting under statutory authority of the United States to regulate unfair or deceptive trade practices. The Court briefly will discuss both.

Under the Louisiana Banking Law, a "commercial lender" is "any person *not otherwise subject to regulation* or required to be licensed under the laws of this state who takes assignment of or defers payment of any obligation for any domestic corporation, foreign corporation, ... or any other person entering into obligations for commercial or business purposes." LA. REV.STAT. § 6:2(3) (emphasis added). As used in the Louisiana Banking Law, a "person" is "any natural *or juristic* person," unless the context of a specific statute within the law requires limiting the use of the term to only natural persons. LA. REV.STAT. § 6:2(12) (emphasis added).

The Louisiana commissioner of financial institutions has "supervisory and regulatory jurisdiction over all *financial institutions.*" LA.REV.STAT. § 6:101(A) (emphasis added). A financial institution is "any person organized to engage in the *business of banking* pursuant to the laws of the United States or any person organized to engage in the *business of banking*" pursuant to the Louisiana Banking Law. LA.REV.

STAT. § 6:2(8) (emphasis added). "'Business of banking' means lending money, *and* either receiving deposits, or paying checks anywhere within this state." LA. REV.STAT. § 6:2(3) (emphasis added).

BACF qualifies as a "commercial lender" under the Louisiana Banking Law. However, since it does not receive deposits or pay checks within this state, it is not subject to the jurisdiction of the Louisiana commissioner of financial institutions.[9] While several courts have noted that the Louisiana UTPL does not apply to banks and savings and loan institutions, this Court has found only one which extended the exemption to commercial lenders. *See Preferred Inv. Corp. v. Neucere,* 592 So.2d 889 (La.Ct.App.1991). However, the trial court decided that case during the period when commercial lenders *were* subject to the jurisdiction of the Louisiana commissioner of financial institutions.

Therefore, the provisions of the Louisiana UTPL will apply to BACF unless it is subject to the FTC's jurisdiction in its regulation of unfair or deceptive trade practices. Generally, only banks, savings and loan institutions, and "commercial lending companies *owned or controlled by foreign banks*" are subject to such regulation. *See* 15 U.S.C. § 57a(f). The Louisiana Legislature recognized as much.[10]

■ Unfortunately for BACF, this Court cannot use the legal maxim *inclusio*

9. The Court notes that as "limited function financial institutions," commercial lenders became subject to the jurisdiction of the Louisiana commissioner of financial institutions on January 1, 1985. *See* LA.REV.STAT.ANN. § 6:451 (West 1992). However, the statute providing such jurisdiction was repealed effective July 2, 1991.

10. When the Louisiana Legislature enacted the statute subjecting commercial lenders to the jurisdiction of the commissioner of financial institutions, the following comment accompanied the revision.

> This section is new and responds to changes occurring within the banking industry. Deregulation at the federal level has resulted in the emergence of "non-

bank" banks or "near" banks. Recognizing that the performance of banking functions by persons other than financial institutions raises same policy concerns that have resulted in the unique status of financial institutions as regulated entities, this law imposes licensure requirements on certain limited function financial institutions. Licensure permits the continued development of such institutions without the imposition of onerous regulatory burdens; this is consistent with the thrust of deregulation.

LA.REV.STAT.ANN. § 6:451 cmt. (West 1992). However, as noted above, that statute was repealed by the legislature in 1991. *See supra* note 9.

*unius est exclusio alterius* to dismiss Jesco's claim under the Louisiana UTPL. This Court is not interpreting a statute; it is applying a holding of the Louisiana Supreme Court. That court refused to rule "on whether there are any exceptions to the credit agreement statute, such as fraud, misrepresentation, promissory estoppel or particularly vulnerable parties." *Rockwell,* 661 So.2d at 1332. The omission of the Louisiana UTPL cannot be construed to be determinative of the court's intent. It specifically stated that it "decline[d] ... to adopt a blanket rule ... that the credit agreement statute precludes all actions for damages arising from oral credit agreements, regardless of the theory of recovery asserted." *Id.* at 1332 n. 2. Therefore, the Louisiana Credit Agreement Statute and the Louisiana UTPL are *not* mutually exclusive.

In arguing that the Louisiana UTPL does not apply to the case at hand, BACF claims that Jesco is not a "consumer," and that the loan in question is not a "consumer transaction." While BACF is correct on the latter point,[11] its argument is of no moment. The Louisiana UTPL provides that "[a]ny *person* who suffers any ascertainable loss of money ... as a result of the use or employment by another person of an unfair or deceptive method, act or practice ... may bring an action individu-

ally but not in a representative capacity to recover actual damages." La.Rev.Stat. § 51:1409 (emphasis added). As used above, the term "person" means "a natural person, corporation, ... [or] any other legal entity." La.Rev.Stat. § 51:1402(8).

The Louisiana UTPL does apply to the case at hand. Accordingly, this portion of BACF's Motion for Summary Judgment also must be DENIED.[12]

### 7. *Mitigation of Damages*

Finally, BACF argues that Jesco's claims are precluded by its failure to mitigate the damages it allegedly suffered. The Louisiana Civil Code provides that "[a]n obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced." La.Civ.Code art.2002.

However, the above-quoted article is contained within Title IV of Book III of the Louisiana Civil Code, entitled "Conventional Obligations or Contracts." Since Jesco's claim for breach of contract has been dismissed,[13] this portion of BACF's Motion for Summary Judgment has been rendered MOOT.

---

11. For purposes of the Louisiana UTPL, a consumer transaction is "any transaction involving trade or commerce to a *natural person,* the subject of which transaction is primarily intended for personal, family, or household use." La.Rev.Stat. § 51:1402(3) (emphasis added).

12. However, the Court briefly will address an issue raised in a Motion to Continue Trial filed only recently on behalf of Underwriters. In said motion Underwriters stated that "because of the claims under the Louisiana Unfair Trade Practices Act and based upon notification of the Attorney General, it is anticipated [that] the plaintiff will seek to treble the[ ] damages" sought. (Doc. 341). The Court hereby dispels that notion.

In relevant part, the Louisiana UTPL provides that

[i]f the court finds the unfair or deceptive method, act or practice was knowingly used, *after being put on notice by the director or attorney general,* the court *shall* award three times the actual damages sustained. In the event that damages are awarded under this Section, the court *shall* award to the person bringing such action reasonable attorney's fees and costs.

La.Rev.Stat. § 51:1409(A) (emphasis added).

In the case at hand, BACF was put on notice that a claim under the Louisiana UTPL had been filed against it on June 29, 1999. *See* Jesco's Memorandum in Opposition to BACF's Motion for Summary Judgment, Exhibit 34. Since any alleged violation of UTPL occurred *before* that time, while an award of reasonable attorney fees is possible, an award of treble damages is *not.*

13. *See supra* pp. 719–721.

C. *Underwriters' Additional Argument in Support of Granting Summary Judgment*

Underwriters argue that they "are entitled to an adverse inference because plaintiff has spoliated the evidence." (Underwriters' Memorandum in Support of Their Motion for Summary Judgment, p. 2). Underwriters then cite cases standing for the basic proposition that an adverse presumption may be drawn against a party who has "lost" or "spoliated" evidence that such evidence would have been unfavorable to his, her, or its case.[14] In reply Jesco argues that the Fifth Circuit has held that an adverse inference drawn from the destruction of records or documents is predicated upon a showing of bad conduct or bad faith.

Each of these determinations shall be made by the members of the jury. This Court will instruct the jury as to the applicable law at the conclusion of trial. Underwriters' claim that Jesco has spoiled the evidence is not sufficient to warrant the granting of Summary Judgment. Accordingly, Underwriters' Motion for Summary Judgment must be DENIED.

## III. Conclusion

Having addressed all of the relevant issues presented by the various motions for summary judgment presently pending before the Court,

**IT IS ORDERED** that BACF's Motion for Summary Judgment (Doc. 123) be, and the same hereby is **GRANTED IN PART** and **DENIED IN PART** pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Jesco's claim relating to the alleged breach of contract on the part of BACF be, and the same hereby is **DISMISSED WITH PREJUDICE.** In all other respects, BACF's Motion for Summary Judgment hereby is **DENIED.** The Motions for Summary Judgment filed on behalf of Continental and AISLIC (Docs. 248 and 258, respectively) therefore have been rendered **MOOT.**

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed on behalf of Underwriters (Doc. 255) be, and the same hereby is **DENIED.**

---

14. Underwriters also argue that under the doctrine of spoliation, the Court is left "with no other conclusion but that there was no commitment letter" issued by BACF to Jesco. (Underwriters' Memorandum in Support of Their Motion for Summary Judgment, pp. 2–3). To the extent that this Court already has dismissed Jesco's claim for breach of contract, Underwriters' claim has been rendered moot. The *jury* must evaluate the credibility of the witnesses and draw inferences from the evidence presented in order to decide Jesco's other claims.