**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 00-31195
_____

JESCO CONSTRUCTION CORPORATION,

Plaintiff-Appellee,

VERSUS

NATIONSBANK CORPORATION, ET AL.,

Defendants,

AMERICAN INTERNATIONAL SPECIALTY LINES
INSURANCE COMPANY; CONTINENTAL CASUALTY COMPANY;
UNDERWRITERS AT LLOYDS OF LONDON,

Defendants-Appellants,

VERSUS

BANK OF AMERICA COMMERCIAL FINANCE CORPORATION,
formerly known as NationsCredit Commercial Corporation,

Cross Claimant-Appellant.

_____

Appeals from the United States District Court
For the Eastern District of Louisiana
_____

December 28, 2001

Before JONES and DeMOSS, Circuit Judges, and FELDMAN,[*] District Judge.

DeMOSS, Circuit Judge:

**CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF LOUISIANA, PURSUANT TO RULE XII OF THE RULES OF THE SUPREME COURT OF LOUISIANA.**

**TO THE SUPREME COURT OF LOUISIANA AND THE HONORABLE JUSTICES THEREOF:**

**I.   STYLE OF THE CASE**

The style of the case in which certification is made is Jesco Construction Company, Plaintiff-Appellee, versus NationsBank Corporation, NationsCredit, and NationsCredit Commercial Corporation, Defendants, and American International Speciality Lines Insurance Company, Continental Casualty Company, Underwriters at Lloyds of London, Defendants-Appellants, versus Banc of America Commercial Finance Corporation, formerly known as NationsCredit Commercial Finance Corporation, Cross Claimant-Appellant, on appeal from the United States District Court for the Eastern District of Louisiana.  This case involves a determinative question of state law; federal jurisdiction is based solely on diversity of citizenship.

---

[*]  District Judge of the Eastern District of Louisiana, sitting by designation.

## II.   STATEMENT OF THE CASE

### A.   Background

Jesco sought a $17.7 million loan from Bank of America Commercial Finance Corporation f/k/a NationsCredit Commercial Finance Corporation (BACF) to purchase King Fisher Marine Services' stock. The parties' versions of why the deal came apart at the last minute differ greatly. Jesco claims that the appraisals were done; the terms were negotiated; the closing documents, including the notes, mortgages, and guarantees were circulated; and that on October 23, 1997, BACF indicated that the loan was approved, the transaction would close by the following Friday, and that it was a "done deal." In contrast, BACF claims that appraisals of King Fisher revealed that it was simply worth less than the bank's letter of interest required. An unrelated third party eventually purchased King Fisher's stock for $2 million more than the Jesco offer, and its financing was based solely on the same documents and appraisals BACF relied upon in denying Jesco's loan application.

In April 1998, Jesco sued BACF over its failure to loan these funds. The case was removed to federal court based on diversity of citizenship. In its original petition, Jesco alleged breach of contract, detrimental reliance, negligent misrepresentation, unfair trade practices, breach of the duty of good faith and fair dealing, promissory and equitable estoppel, and breach of fiduciary duty. The parties dispute whether Jesco also made out a fraud claim.

3

Jesco twice amended its petition, listing as defendants: BACF; American International Speciality Lines Insurance Co. (AISLIC); Continental Casualty Co.; and Underwriters at Lloyds of London. The insurers answered by pleading various coverage exclusions and other limitations as affirmative defenses.

The defendants all filed motions for summary judgment, alleging, among other things, that because no written credit agreement existed between Jesco and BACF as required by section 6:1122 of the Louisiana Credit Agreement Act,[1] all Jesco's causes of action were barred. The district court made an express finding that there was no written agreement within the meaning of section 6:1122. *Jesco Constr. Corp. v. Nationsbank Corp.*, 107 F. Supp. 2d 715, 720 (E.D. La. 2000). However, making an "*Erie* guess" based on the Louisiana Supreme Court's dicta in *Whitney National Bank v. Rockwell*, the court also concluded that while the Louisiana Credit Agreement Statute's writing requirement did bar Jesco's breach-of-contract claim, it did not bar Jesco's alternative causes of action. *See id*. at 719-20. Accordingly, the court granted partial summary judgment and allowed Jesco to proceed against BACF, AISLIC, Continental, and Underwriters on its other claims. *See id*. at 720-25.

---

[1] Section 6:1122 provides: "A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor."

The defendants all filed Motions to Certify and/or Amend the court's order based on the intervening Louisiana Court of Appeals' decision in *Guzzardo-Knight v. Central Progressive Bank*, which held that claims for fraud, negligent misrepresentation, and detrimental reliance, which arise out of an oral credit agreement, are barred by the Louisiana Credit Agreement Statute. 762 So. 2d 1243, 1247 (La. App. 1st Cir. 2000), *writ denied*, 793 So. 2d 208 La. 2001). The district court declined to reconsider its ruling and instead certified this issue for interlocutory appeal to this Court.[2] The court limited the question on appeal to "whether the Louisiana Credit Agreement Statute precludes all actions for damages arising from oral credit agreements regardless of the legal theory of recovery asserted."

## B.    Relevant Caselaw

Under well-established *Erie* principles, we are required to follow state law in diversity cases. *See Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938). As the Louisiana Supreme Court has recognized, the Louisiana Credit Agreement Statute is silent on the question of whether it precludes causes of action other than breach of contract. *See Whitney National Bank v. Rockwell*, 661 So. 2d 1325, 1331 (La. 1995) ("The Louisiana statute does not address, one way or the other, any protection of unsophisticated borrowers or any exemption based on fraud, misrepresentation, promissory

---

[2]  *See* 28 U.S.C. 1292 (b).

5

estoppel or other equitable theory."). Accordingly, we must look to the Louisiana courts' interpretations of the statute for guidance.

Louisiana's second circuit court of appeals was the first to consider section 6:1122's effect on non-breach-of-contract claims. *See Fleming Irrigation, Inc. v. Pioneer Bank & Trust Co.*, 661 So. 2d 1035 (La. App. 2d Cir. 1995), *writ denied*, 664 So. 2d 427 (La. 1995). In *Fleming*, the plaintiff, complaining about oral promises made by the defendant, argued that the Louisiana Credit Statute does not affect recovery under other theories, such as fraudulent or tortious misrepresentation, negligence, promissory estoppel, or detrimental reliance. 661 So. 2d at 1039. The Second Circuit disagreed, concluding that section 6:1122 precludes all actions for damages arising from oral promises to lend money. *Id.*

A few months after *Fleming* was decided, the Louisiana Supreme Court considered another case involving the Louisiana Credit Agreement Statute. *See Rockwell*, 661 So. 2d 1325. The court found it unnecessary to reach "whether there are any exceptions to the credit agreement statute, such as fraud, misrepresentation, promissory estoppel or particularly vulnerable parties." *Id*. at 1332. But it went on to say that it declined "to adopt a blanket rule, as the Second Circuit [in *Fleming*] recently did in holding that the credit agreement statute precludes *all* actions for damages arising from oral credit agreements, regardless of the theory of

recovery asserted." *Id*. at 1332 n.6. Two months after deciding *Rockwell*, the court denied review in *Fleming. See Fleming Irrigation, Inc. v. Pioneer Bank & Trust Co.*, 664 So.2d 427 (La. 1995).

The Louisiana courts of appeals have twice since revisited this issue, reaching opposite results. In *Diamond Services Corp. v. Benoit*, the Third Circuit Court of Appeals rejected a blanket rule prohibiting all claims related to oral agreements to lend money—as the Supreme Court in *Rockwell* had done—noting that such a rule "would allow creditors to freely defraud unsophisticated borrowers and rely on the law in perpetrating that fraud." 757 So. 2d 23, 28-29 (La. App. 3rd Cir. 1999), *rev'd in part on other grounds*, 780 So. 2d 367 (La. 2001). Accordingly, the court reversed the district court's dismissal of a fraud claim and held that it was a factual question to be determined by the trial court. *Id*. at 29.

In contrast, the first circuit court of appeals in *Guzzardo-Knight v. Central Progressive Bank* followed *Fleming* to hold that the "plaintiffs' causes of action for fraud, negligent misrepresentation and detrimental reliance, which arise out of an oral credit agreement, are barred by La. R.S. 6:1122." 762 So. 2d at 1247.

7

## C. Authority for Certification

Rule XII of the Rules of the Supreme Court of Louisiana allows a Federal Circuit Court of Appeals, upon its own motion, to certify a question of law to the Supreme Court on a determinative issue if there is no clear controlling precedent in the decisions of the State Supreme Court. We have done so in the past when we determined that the issue carried "tremendous consequences" for a particular state industry, *Frey v. Amoco Prod. Co.*, 951 F.2d 67, 67 (5th Cir. 1992), and when "the intermediate Louisiana appellate court decisions cast some doubt on how the Louisiana Supreme Court would resolve" an important state issue. *Grubbs v. Gulf Int'l Marine, Inc.*, 985 F.2d 762, 763 (5th Cir. 1993).

Here, the parties urge that this case presents a important question of state law, and the Louisiana Bankers Association's *amicus curiae* brief indicates that our resolution has widespread ramifications for the banking industry in Louisiana. Accordingly, we conclude that the issue presented is of such importance that we should refrain from making an "*Erie* guess" as to how the Louisiana Supreme Court might rule, and instead should request binding advice from that court through the certification process.

## III. CERTIFIED QUESTION

The question certified is whether the Louisiana Credit Agreement Statute precludes all actions for damages arising from

oral credit agreements, regardless of the legal theory of recovery asserted.

## IV. CONCLUSION

We disclaim any intent that the Louisiana Supreme Court confine its reply to the precise form or scope of the legal question that we certify. The answer provided by the Louisiana Supreme Court will determine the issue on appeal in this case. We transfer to the Louisiana Supreme Court the record and appellate briefs in this case with our certification.

We CERTIFY the question stated to the Louisiana Supreme Court.